**TINICUM TOWNSHIP**

v.

**Allan J. NOWICKI and River Road Quarry, LLC**

v.

**River Road Quarry, LLC and Pennswood Hauling, LLC**

v.

**Tinicum Township Zoning Hearing Board.**

**Appeal of: River Road Quarry, LLC and Pennswood Hauling, LLC.**

Commonwealth Court of Pennsylvania.

Argued May 14, 2014.

Decided Sept. 9, 2014.

Jeffrey S. Treat, Honesdale, and Robert W. Gundlach, Jr., Warrington, for appellants.

Stephen B. Harris, Warrington, for appellees.

BEFORE: DAN PELLEGRINI, President Judge, and BONNIE BRIGANCE LEADBETTER, Judge, and RENÉE COHN JUBELIRER, Judge, and ROBERT SIMPSON, Judge, and MARY HANNAH LEAVITT, Judge, and P. KEVIN BROBSON, Judge, and PATRICIA A. McCULLOUGH, Judge.

OPINION BY Judge COHN JUBELIRER.

River Road Quarry, LLC (River Road) and Pennswood Hauling, LLC (Pennswood) (collectively, Landowners) appeal from the Order of the Court of Common Pleas of Bucks County (trial court) that affirmed the Order of the Tinicum Township Zoning Hearing Board (Board) holding that River Road's operation of a business producing mulch on its property (the Property) located in Tinicum Township (Township) violated the Township Zoning Ordinance (Ordinance).[1] On appeal, Landowners argue that the trial court erred in holding that the mulching operation does not qualify as an agricultural operation or forestry activity such that it is protected by the Pennsylvania Municipalities Plan-

---

1. Before the trial court, in addition to the zoning appeal at issue in this case, was a complaint by the Township for a preliminary and permanent injunction against River Road and its owner, Allan Nowicki, seeking to enjoin them from continuing the mulching operation. This complaint and the zoning appeal were consolidated before the trial court. Mr. Nowicki and River Road filed a separate appeal from the trial court's Order disposing of Landowners' appeal from the Board's Decision, which was initially docketed in this Court at 2175 C.D.2012. That appeal was subsequently consolidated with the current matter. However, by Order dated April 4, 2013, this Court severed and quashed the appeal docketed at 2175 C.D.2012 because the trial court's Order on appeal here disposed only of the appeal of Landowners from the Board's Decision, not of the Township's complaint for an injunction. *Tinicum Township v. Nowicki* (Pa.Cmwlth., No. 2175 C.D. 2012, filed April 4, 2013).

ning Code (MPC)[2] and the Act commonly known as the "Right to Farm Act,"[3] in conjunction with Section 315(a) of the Agriculture Code, 3 Pa.C.S. § 315(a). Discerning no error, we affirm.

The Property is a three-acre former quarry located in the Township's E (Extraction) Zoning District. Pennswood hauls raw materials, including tree stumps, yard waste, and logs to the Property; some similar materials are brought to the Property by landscapers. River Road processes these materials into mulch using a tub grinder. Pennswood then hauls the finished mulch off the Property to buyers. (Trial Ct. Op. at 1–2; Board Decision, Findings of Fact (FOF) ¶ 11, 18.)

On June 26, 2009, the Township Zoning Officer sent an enforcement notice to River Road stating that its mulching operation was in violation of the Ordinance. In response, River Road ceased production and sale of the mulch. River Road resumed mulching operations in the Spring of 2011. The Township Zoning Officer issued a second Enforcement Notice (Notice) on October 13, 2011. This Notice stated that Landowners were in violation of Sections 601.2 and 1302 of the Ordinance for operating non-permitted mill, warehouse, and wholesale uses on the Property in the E (Extraction) Zoning District. (Trial Ct. Op. at 2; Notice at 2, October 13, 2011.)[4]

Landowners appealed the October 13, 2011 Notice and a hearing was held before the Board. The Township presented the testimony of its Zoning Officer and Herbert Cook, the owner of the parcel from which the Property had been subdivided. Landowners presented the testimony of Allan Nowicki, owner of River Road and co-owner of Pennswood, and Jonathan Nowicki, co-owner of Pennswood. Following the hearing, the Board issued its Decision upholding the October 13, 2011 Notice and concluding that the mulching operation was not a permitted use on the Property. In reaching this conclusion, the Board held that the mulching operation did not qualify as an A–1 crop farming/nursery use or an A–6 forestry use under the Ordinance. (Board Decision, Conclusions of Law (COL) ¶ 2.) It was important to the Board's holding that none of the raw materials from the mulching operation were derived from the Property itself. (COL ¶¶ 2–3.) The Board analogized the situation to the raising of sheep:

If a farmer raises sheep and shears the wool and then sells the wool to a factory which knits that wool into sweaters, the processing of the wool into sweaters at the factory is not an agricultural use but is a manufacturing use. The hauling of wood produced elsewhere onto the site for further processing is not an agricultural use or a forestry use.

(COL ¶ 4.) Landowners appealed the Board's Decision to the trial court.

▄▄▄ Without taking new evidence regarding the appeal,[5] the trial court af-

**2.** Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11202.

**3.** Act of June 10, 1982, P.L. 454, *as amended,* 3 P.S. §§ 951–957.

**4.** The Notice also cited Landowners for establishing mill, manufacturing and wholesale uses on a parcel smaller than the minimum lot size of 5 acres, in violation of Section 701 of the Ordinance, and for storing materials in a flood plain that could be carried downstream, in violation of Section 804.22 of the

Ordinance. The Board, in its Decision, held that the size of the Property was a pre-existing non-conformity, but did not address the alleged violation of Section 804.22, regarding storage of materials in a flood plain. (Board Decision, Conclusions of Law ¶ 1.) Neither party discusses either of these issues before this Court.

**5.** By this point the trial court had held a hearing on the Township's petition for a preliminary injunction; however, that hearing was only regarding an agreement by the par-

firmed the Board's Decision and concluded that the mulching operation was not an agricultural or forestry use. Relying on this Court's decisions in *Clout v. Clinton County Zoning Hearing Board*, 657 A.2d 111 (Pa.Cmwlth.1995) and *Wellington Farms v. Township of Silver Spring*, 679 A.2d 267 (Pa.Cmwlth.1996), the trial court held that the mulching operation did not qualify as an agricultural use because the raw materials from which the mulch was made did not originate from the Property and none of the resultant mulch was used on the Property. (Trial Ct. Op. at 4–6.) Landowners appealed the trial court's Order to this Court.[6]

■ Before this Court, Landowners argue that the mulching operation is protected as an agricultural or forestry use under the definitions set forth in the MPC or as a normal agricultural activity under the Right to Farm Act and Section 315(a) of the Agriculture Code.[7]

We first address Landowners' argument that its mulching operation is protected as an agricultural or forestry use under the MPC. Section 603 of the MPC limits the restrictions municipal zoning ordinances may set on agricultural and forestry uses:

(f) Zoning ordinances may not unreasonably restrict forestry activities. To encourage maintenance and management of forested or wooded open space and promote the conduct of forestry as a sound and economically viable use of forested land throughout this Commonwealth, forestry activities, including, but not limited to, timber harvesting, shall be a permitted use by right in all zoning districts in every municipality.

. . . .

(h) Zoning ordinances shall encourage the continuity, development and viability of agricultural operations. Zoning ordinances may not restrict agricultural op-

ties and no evidence was taken. *See* footnote 4 *supra* (describing the procedural history before the trial court). The trial court decided the issues surrounding Landowners' appeal of the Board's Decision based on the record made before the Board. (*See* Trial Ct. Op. at 2 (stating that the trial court did not take additional evidence and reviewed the Board's Decision for abuse of discretion or error of law).)

6. Where the trial court takes no additional evidence, this Court's "review is limited to determining whether the Board committed an abuse of discretion or an error of law." *Taliaferro v. Darby Township Zoning Hearing Board*, 873 A.2d 807, 811 n. 1 (Pa.Cmwlth. 2005). A zoning hearing board abuses its discretion when its factual findings are not supported by substantial evidence. *JoJo Oil Co. v. Dingman Township Zoning Hearing Board*, 77 A.3d 679, 685 n. 6 (Pa.Cmwlth. 2013). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

7. This matter was initially argued before a three-judge panel of this Court on October 10,

2013. Subsequently, this Court directed that this matter be argued before the Court en banc. In addition, this Court directed that the parties be prepared to address the following issues at argument before the Court en banc:

1. In order for an activity to qualify as an "agricultural operation" or "forestry activity" under the MPC or Right–to–Farm Act, must the raw materials for the activity originate on the property and the activity produce materials used only on the property?
2. Whether this case is distinguishable from *Gaspari v. Board of Adjustment*, 392 Pa. 7, 139 A.2d 544 (1958).
3. Whether a decision in favor of River Road necessitates overruling *Stoltzfus v. Zoning Hearing Board of Eden Township*, 937 A.2d 548 (Pa.Cmwlth.2007), *Clout* … and *Wellington* … .
4. To what extent River Road's mulching operation, if permitted by the [MPC] or Right to Farm Act, can be regulated by the [Ordinance].

*Tinicum Township v. Nowicki* (Pa.Cmwlth., No. 2176 C.D.2012, filed January 22, 2014).

erations or changes to or expansions of agricultural operations in geographic areas where agriculture has traditionally been present unless the agricultural operation will have a direct adverse effect on the public health and safety. Nothing in this subsection shall require a municipality to adopt a zoning ordinance that violates or exceeds the provisions of ... the [Right to Farm Act].

53 P.S. § 10603(f), (h). Accordingly, if the mulching operation qualifies as a forestry activity or an agricultural operation, then pursuant to Section 603, the Ordinance may not operate to prevent it on the Property. In determining whether the mulching operation falls into either of these two categories, we turn to the definitions of these terms provided by the MPC.

Section 107 of the MPC defines "forestry" as "the management of forests and timberlands when practiced in accordance with accepted silvicultural [8] principles, through developing, cultivating, harvesting, transporting and selling trees for commercial purposes, which does not involve any land development." 53 P.S. § 10107. Section 107 defines "agricultural operation" as:

> an enterprise that is actively engaged in the commercial production and preparation for market of crops, livestock and livestock products and in the production, harvesting and preparation for market or use of agricultural, agronomic, horticultural, silvicultural and aquacultural crops and commodities. The term includes an enterprise that implements changes in production practices and procedures or types of crops, livestock, livestock products or commodities produced consistent with practices and procedures that are normally engaged by farmers or

are consistent with technological development within the agricultural industry. *Id.*

This Court addressed a factually similar situation in *Stoltzfus v. Zoning Hearing Board of Eden Township*, 937 A.2d 548 (Pa.Cmwlth.2007). *Stoltzfus* dealt with the question of whether a log processing business constituted a forestry use. *Id.* at 549. The business involved purchasing trees, cutting them down, trimming the tops and branches off, transporting the resulting logs to the property, cutting the logs to various sizes, and selling the resulting smaller logs to sawmills. *Id.* We rejected the argument that this business constituted a forestry activity on the property, looking to the explicitly stated purpose of Section 603(f), which "is to encourage maintenance and management of forested space and promote the use of forested land." *Id.* at 550. Because the landowner in *Stoltzfus* did not own, maintain, or manage a forest on his property, or "develop, cultivate, harvest, transport, or sell trees from his land" this Court concluded that his log processing business did not constitute a forestry activity. *Id.*

Similarly in this case, River Road does not maintain or manage a forest on the Property and does not develop, cultivate, harvest, transport, or sell trees on the Property. Landowners argue that *Stoltzfus* was wrongly decided and focused on avoiding what it perceived as an absurd result rather than respecting the expansive language of Section 107 of the MPC. However, *Stoltzfus* relied upon Section 107's explicit language defining "forestry" as the "management of forests and timberlands." 53 P.S. § 10107; *Stoltzfus*, 937 A.2d at 550. Thus, under *Stoltzfus*, the

---

8. "Silviculture" is defined as "a phase of forestry that deals with the establishment, development, reproduction, and care of forest trees." Webster's Third New International Dictionary 2120 (2002).

use of a property must relate to trees grown on the property in order for that use to qualify as a forestry activity.

Likewise, the production of crops, livestock, or commodities is a necessary part of Section 107's definition of "agricultural activity" as "an enterprise that is actively engaged in the commercial *production and* preparation for market of crops ... and in the *production,* harvesting *and* preparation for market or use of ... crops and commodities." 53 P.S. § 10107 (emphasis added). This makes sense given that Section 603(h) evidences a purpose to protect farmland, limiting its protection to "geographic areas where agriculture has traditionally been present." 53 P.S. § 10603(h). Such protection is not necessary where the use in question has no connection to the land and could be conducted on any piece of property. Landowners argue that because they take a silvicultural commodity—tree stumps, logs, and branches—and transform them into a more marketable product—mulch—they are engaged in an agricultural activity because they are preparing the silvicultural commodity for market. Following this interpretation to its logical conclusion would permit the transporting of a silvicultural commodity to any property on which that commodity could be transformed into a more marketable product, no matter where the property is located. Neither this Court nor the Supreme Court has accepted such an interpretation of an agricultural operation disconnected from the use of the land that produced the commodity. Instead, we conclude that in order to qualify as either an agricultural operation or a forestry activity as defined by Section 107 of the MPC and protected by Section 603(f) and 603(h), the use in question must have some connection to or utilization of the land itself for production of trees, livestock or agricultural, agronomic, horticultural, silvicultural, or aquacultural crops or commodities. We conclude that, under the circumstances of this case, the mulching operation at issue does not qualify as an agricultural operation or forestry activity under the MPC.

Landowners cite *Gaspari v. Muhlenberg Township Board of Adjustment,* 392 Pa. 7, 139 A.2d 544 (1958), as standing for the principle that the production of artificial compost is an agricultural operation. However, *Gaspari* must be read in its factual context. *Gaspari* did not deal simply with the production of a facilitator of growth, such as compost, fertilizer, or mulch, but with a seeded medium from which mushrooms would grow. The Supreme Court noted that one of the landowners described the mushroom spawn at issue "as follows: '[i]n comparing it to a plant, it would be the starting of the seed.'" *Id.* at 545 n. 1. The Supreme Court approvingly quoted the trial court's description of the activity at issue:

> To us it parallels the case of an orchardist who plants and cultivates fruit trees of various kinds and, after they have attained a certain maturity, sells them to fruit growers; or the grower of tobacco plants, who sets out the seed in specially prepared beds and later removes the growing slips for planting in his own fields, or sells them to other farmers.

*Id.* at 548. Thus, the landowners in *Gaspari* were not merely producing an inert synthetic compost on their property, but were using that compost to start a crop— mushrooms—and sell that started crop to other farmers. The land in that case was being used for the production of a crop. Therefore, there is no conflict with the Supreme Court's holding that this activity constituted farming and our holding in this case that Section 107's definition of "agricultural activity" necessarily requires the use of land for production.

Although interpreting the language of a municipal ordinance rather than the MPC, this Court's decision in *Clout* is also instructive. In *Clout*, this Court dealt in part with the question of whether the operation of a composting facility qualified as an agricultural use under a municipal zoning ordinance. We rejected the argument that *Gaspari* controlled, stating "[n]one of the compost to be made by appellant would be a product of its land and none of the compost would be applied by appellant to fertilize and condition its land." *Clout*, 657 A.2d at 114. Similarly, in this case, none of the mulch produced by River Road is a product of the Property and none of the mulch is used on the Property.

Accordingly, for the foregoing reasons, we do not adopt Landowners' position that the mulching operation qualifies as an "agricultural operation" or "forestry activity" as those terms are defined and protected by Sections 107 and 603 of the MPC.

■ Next, we address Landowners' argument that the mulching operation on the Property falls within the protection of the Right to Farm Act and the Agriculture Code. Landowners rely upon Section 313(a) of the Agriculture Code, 3 Pa.C.S. § 313(a), which provides that local governments may not adopt or enforce an "unauthorized local ordinance," *id.*, which Section 312 of the Agriculture Code, 3 Pa.C.S. § 312, defines as:

An ordinance enacted or enforced by a local government unit which does any of the following:

(1) Prohibits or limits a normal agricultural operation unless the local government unit:

(i) has expressed or implied authority under State law to adopt the ordinance; and

(ii) is not prohibited or preempted under State law from adopting the ordinance.

(2) Restricts or limits the ownership structure of a normal agricultural operation.

*Id.*[9] Section 312 incorporates the definition of "normal agricultural operation" from Section 2 of the Right to Farm Act, which defines that term, in relevant part, as:

The activities, practices, equipment and procedures that farmers adopt, use or engage in the production and preparation for market of poultry, livestock and their products and in the production, harvesting and preparation for market or use of agricultural, agronomic, horticultural, silvicultural and aquacultural crops and commodities and is:

(1) not less than ten contiguous acres in area; or

(2) less than ten contiguous acres in area but has an anticipated yearly gross income of at least $10,000.

The term includes new activities, practices, equipment and procedures consistent with technological development within the agricultural industry. Use of equipment shall include machinery designed and used for agricultural operations, including, but not limited to, crop dryers, feed grinders, saw mills, hammer mills, refrigeration equipment, bins and related equipment used to store or prepare crops for marketing and those items of agricultural equipment and machinery defined by the act of December 12, 1994 (P.L. 944, No. 134), known as the Farm Safety and Occupational

---

**9.** We note that the parties do not discuss whether the elements of Section 312(1)(i)-(ii) are satisfied, i.e. whether the Township had authority to enact the Ordinance or was not prohibited or preempted under State law from adopting the Ordinance. 3 Pa.C.S. § 312(1)(i)-(ii).

Health Act. Custom work shall be considered a normal farming practice. 3 P.S. § 952. Landowners argue that the mulching operation meets this definition of "normal agricultural operation" because it represents a new practice in silviculture or forest management whereby the processing of trees or tree products is conducted in a different location than the property on which the trees are grown and felled. Landowners also argue that a hammer mill, which is the main piece of equipment employed in the mulching operation, is specifically recognized by the definition as machinery designed and used for agricultural operations.

However, like Section 107's definition of "agricultural activity," Section 2's definition of "normal agricultural operation" focuses on the use of farmland for the production of crops and livestock: "[t]he activities, practices, equipment and procedures that *farmers* adopt, use or engage in the *production* and preparation for market of poultry, livestock and their products and in the *production*, harvesting and preparation for market or use of agricultural, agronomic, horticultural, sil-vicultural and aquacultural crops and commodities." 3 P.S. § 952 (emphasis added). As with Section 107's definition of "agricultural activity," we believe that this definition of "normal agricultural operation" necessarily requires some connection between the use at issue and the employment of the property in question for the production of an agricultural, agronomic, horticultural, silvicultural, or aquacultural crop or commodity. This interpretation is supported by the legislative policy behind the Right to Farm Act: "[i]t is the declared policy of the Commonwealth to conserve and protect and encourage the development and improvement of its *agricultural land for the production of food and other agricultural products*." 3 P.S. § 951 (emphasis added). Because none of the raw materials from the mulching operation are produced on the Property and none of the resulting mulch is used for the production of livestock, crops, or agricultural commodities on the Property, the mulching operation is not a "normal agricultural operation" as defined by Section 2 of the Right to Farm Act.[10]

10. Landowners also invoke Section 3 of the Right to Farm Act, which provides that "normal agricultural operations" may not be restricted by nuisance ordinances, and that zoning ordinances may not prohibit direct sales of agricultural commodities by farmers:

(a) Every municipality shall encourage the continuity, development and viability of agricultural operations within its jurisdiction. Every municipality that defines or prohibits a public nuisance shall exclude from the definition of such nuisance any agricultural operation conducted in accordance with normal agricultural operations so long as the agricultural operation does not have a direct adverse effect on the public health and safety.

(b) Direct commercial sales of agricultural commodities upon property owned and operated by a landowner who produces not less than 50% of the commodities sold shall be authorized, notwithstanding municipal ordinance, public nuisance or zoning prohibitions. Such direct sales shall be authorized without regard to the 50% limitation under circumstances of crop failure due to reasons beyond the control of the landowner.

3 P.S. § 953. As discussed above, we hold that the mulching operation at issue does not meet Section 2's definition of a "normal agricultural operation." However, it does not appear that either of these provisions would apply to the current matter even if it did. The Ordinance is a zoning ordinance, not an ordinance defining or prohibiting a public nuisance. Therefore, subsection (a) does not apply. At issue in this case is not only the sale of the mulch, but the processing of tree materials into mulch. While subsection (b) might protect the direct commercial sale of mulch, it does not prohibit a zoning ordinance controlling where the mulch may be manufactured. Therefore, it does not appear that

For these reasons, we affirm the Order of the trial court.

### ORDER

**NOW,** September 9, 2014, the Order of Court of Common Pleas of Bucks County in the above-captioned matter is hereby **AFFIRMED.**

### DISSENTING OPINION BY Judge LEAVITT.

Respectfully, I dissent. The trial court held that the mulching operation of Landowners[1] was manufacturing and, as such, belonged only in the Township's Manufacturing District. Because Landowners' mulching operation was being conducted on property located on the site of a quarry in the Extraction District of Tinicum Township, the trial court upheld the Township's zoning violation. I would reverse. Landowners are not engaged in manufacturing. Our Supreme Court has held, definitively, that the production of mulch is an agricultural operation and not manufacturing. As such, it cannot be banned from the Township's Extraction District unless necessary to prevent a "direct adverse effect on the public health and safety." Section 603(h) of the Pennsylvania Municipalities Planning Code.[2] 53 P.S. § 10603(h). No such harm was claimed or shown to exist by the Township.

Landowners' mulching operation uses tree roots and branches collected from off-site locations, including farms; grinds them into chips; and places the chips into piles where they decompose into mulch. Occasionally, water is applied to the chips, and the piles are turned by a rake. This is the limit of human contribution to the process. The remaining contribution is made by Mother Nature. Concluding that Landowners' mulching operation was the functional equivalent of a sweater factory belonging in the Manufacturing District, Tinicum Township fined Landowners.

Landowners contend that creating mulch is nothing like a sweater factory, which is manufacturing, but a "normal agricultural operation," as was specifically determined by our Supreme Court in *Gaspari v. Board of Adjustment of Muhlenberg Township*, 392 Pa. 7, 139 A.2d 544 (1958). In rejecting this contention of Landowners, the majority explains that the *Gaspari* holding must be understood in its factual context, an analytical principle to which I subscribe. However, the factual context of the *Gaspari* appeal cannot be distinguished from that present in this appeal. Accordingly, it is dispositive.

Arthur Gaspari and his two brothers developed synthetic compost for growing mushrooms when horse manure, the traditional "food" for mushrooms, became scarce. The Supreme Court described the process by which the Gasparis produced their synthetic compost as follows:

> The ingredients are simply hay and crushed corn cobs which are mixed and aerated, and treated with cyanamid, potash and gypsum. The completed operation usually takes 15 days, during which time the accumulations are moved approximately every three days. The lower Court says in its opinion:
>
> > If the component parts of the synthetic compost were mixed and then used as a medium for the growing of mushrooms, the growing medium would be ineffective. The ingredients must be

---

Section 3 would operate to permit the mulching operation on the Property.

**1.** River Road Quarry, LLC is co-owned by Allan J. Nowicki and his son, Jonathan Nowicki; Allan Nowicki has been, and continues to be, a farmer and forester for many years.

**2.** Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10603(h).

thoroughly mixed, water must be applied together with a prescribed chemical, and the resulting mass periodically turned mechanically so that a bacteriological change may take place. After the change has taken place, the end product is a synthetic manure of compost which is an effective growing medium.

After this exposition [the trial court] arrives at the conclusion that synthetic manure is achieved via a manufacturing process.

*Gaspari*, 139 A.2d at 546. The Supreme Court soundly rejected this conclusion of the trial court.

The Supreme Court dismissed the trial court's logic that the Gaspari brothers were "manufacturing" because they were producing a "new article." It explained that the dispositive question was not "newness" but whether the "new" item was the result of human "skill and labor, entirely or mostly apart from what is done by Nature [herself]." *Id.* The Supreme Court found the human element in the Gaspari process to be nominal, explaining that, "hay and corn cobs participate in the chemical and biological changes when water is poured over them and they are mixed, turned, and moved in the open air." *Id.* at 548. The Supreme Court's description of the Gasparis' production of synthetic compost fits, almost perfectly, the production methods employed by Landowners to produce their mulch: water, mixing and open air. The only difference is that Landowners do not add chemicals to their chips as did the Gasparis. Neither process constitutes manufacturing because each relies principally upon nature to do the job of turning the organic ingredients into a "new" article, *i.e.*, a type of compost.

Tinicum Township argues that *Gaspari* is not binding. It claims that the Gasparis used their compost exclusively to grow mushrooms on their own land. By contrast, it argues, Landowners will sell or use their compost, but not at the quarry. The Township argues from two false premises.

First, the Gasparis did more than grow and sell mushrooms. They operated a full service mushroom business, selling a wide range of "mushroom *supplies* [such] as mushroom paper, mushroom wire, baskets, manure baskets, wash tubs of all sizes, ground tubs, electric cords, insecticides and fungicides, thermometers and different types of hoses and spraying nozzles." *Id.* at 545 (emphasis added). Their synthetic compost was another mushroom supply, and nothing in *Gaspari* suggests that the brothers did not include synthetic compost in their inventory of mushroom-related supplies. Indeed, the township inspector ordered the Gasparis to dispose of "all stock of manure *not required for [their] own immediate use." Id.* (emphasis added). This order would not have been necessary unless the Gasparis sold some of their synthetic compost to their customers.

Second, the *Gaspari* holding does not turn on where the synthetic compost produced by the Gasparis would be used. The sole question in *Gaspari* was whether the production of synthetic mushroom compost constituted a normal agricultural operation or a manufacturing operation. The Supreme Court focused solely on the production method, not the use of the synthetic compost, place of use or the source of the raw materials.[3] In no way does *Gaspari* stand for the proposition that syn-

<hr />

3. It appears that the hay and corn cobs used by the Gasparis came from elsewhere, as did the horse manure they previously used. Like-

wise, here, Landowners acquire their tree by-products from other locations.

thetic compost (also called synthetic manure) must be generated from materials that come from the property where produced and then be used there in order to qualify as an agricultural, as opposed to a manufacturing, operation.

The above study of *Gaspari* shows how far Landowners' mulching operation deviates from the operation of a knitting factory. Board Decision at 6; Conclusion of Law No. 4 (noting the obvious, *i.e.*, that "a factory which knits that wool into sweaters ... is not an agricultural use but is a manufacturing use."). Making sweaters out of wool involves significant human intervention and labor; indeed, Mother Nature does not play a role at all. *See Gaspari*, 139 A.2d at 547 (the key ingredient to manufacturing is a "mechanical process under the domination and control of man").

The Supreme Court held that the production of synthetic compost was not manufacturing but, rather, "well within the ambit of farming in all its branches." *Gaspari*, 139 A.2d at 548 (internal quotation omitted). Likewise, the production of mulch from tree roots and branches, to use as fertilizer, falls "well within the ambit of farming" and, as such, is protected.

Tinicum Township's strained effort to find Landowners' mulch operation "manufacturing" was undertaken because it knew it could not prohibit either an agricultural operation or forestry activity from taking place in the Extraction District. Section 2 of the act commonly referred to as the Right–to–Farm Act[4] limits the ability of municipalities to enact ordinances that restrict a "normal agricultural operation," which includes the sale of "agricultural commodities" and "forestry products." 3 P.S. § 952. Mulch is surely such a commodity, and the Right–to–Farm Act does not say that the commodity has to originate from or be used only on the landowner's property to be protected.[5]

Further, Section 603(h) of the Municipalities Planning Code mandates that "[z]oning ordinances shall encourage ... agricultural operations." 53 P.S. § 10603(h). More specifically, zoning ordinances "may not restrict agricultural operations," defined as "the production, harvesting and *preparation for market or use of agricultural*, agronomic, horticultural, *silvicultural* and aquacultural crops and *commodities*." 53 P.S. §§ 10603(h), 10107(a) (emphasis added). A municipality may not "restrict" agricultural operations unless directly adverse to the public health and safety. 53 P.S. § 10603(h).

---

**4.** Act of June 10, 1982, P.L. 454, *as amended*, 3 P.S. §§ 951–957.

**5.** Landowners argue that this Court has narrowed the scope of *Gaspari*. For example, in *Wellington Farms, Inc. v. Township of Silver Spring*, 679 A.2d 267 (Pa.Cmwlth.1996), this Court held that a landowner violated his occupancy permit to raise, slaughter and market chickens because some of the chickens slaughtered were raised on other farms. Similarly, in *Clout, Inc. v. Clinton County Zoning Hearing Board*, 657 A.2d 111 (Pa. Cmwlth.1995), this Court held that a compost facility, importing 120 tons of materials daily and operating inside a factory-sized building, was not a permitted "natural resource use." Since *Clout* and *Wellington Farms* were de-cided, the legislature has amended the Right–to–Farm Act to expand the definition of a normal agricultural operation. 3 P.S. § 952. Also, in 2005, the legislature enacted limits on local ordinances in the Agricultural Code Act, which incorporates the definition of a normal agricultural operation as defined within the Right–to–Farm Act. *See* 3 Pa.C.S. §§ 312, 315.

Tinicum Township acknowledges that a "normal agricultural operation" includes forestry and even the use of a tub grinder. Township Brief at 15. However, it contends, without citation to language in any statute, that a normal agricultural operation uses only materials that come from the property where the agricultural operation takes place and can only occur on that same property.

The protection of forestry activities is somewhat different. Section 603(f) of the Municipalities Planning Code provides that "forestry activities ... shall be a permitted use by right in all zoning districts in every municipality." 53 P.S. § 10603(f).[6] However, it authorizes a municipality to regulate, reasonably, forestry activities.

In *Stoltzfus v. Zoning Hearing Board of Eden Township*, 937 A.2d 548 (Pa.Cmwlth. 2007), this Court considered an operation by which two people, the landowner and his brother, used one piece of equipment to cut tree trunks into logs, which they sold to sawmills. There was no question in *Stoltzfus* that the operation was mechanical and, thus, was not an agricultural operation under the principles established in *Gaspari*. The question was whether the process, albeit mechanical, was a "forestry activity," permitted in every zoning district because it involved the management of forests. 53 P.S. § 10603(f). This Court held that because the tree trunks came from other property, the operation was not a "forestry activity." *Stoltzfus*, 937 A.2d at 550.

The majority draws on *Stoltzfus* to hold that Landowners' mulching operation does not qualify as a normal agricultural operation because the mulch is not used by Landowners at the quarry, but elsewhere. I disagree with this extension of *Stoltzfus*.

First, nothing in the text of the Municipalities Planning Code or Right–to–Farm Act specifically requires that a forestry activity use trees *from* the property or use the product of that activity *on* the property. In this respect, I believe *Stoltzfus* was wrongly decided. Second, *Stoltzfus* con-

cerned a mechanical operation, not the production of mulch. *Gaspari* was irrelevant to the question in *Stoltzfus*.

To restrict an agricultural operation or a forestry activity to the use of materials grown on the landowner's land, and for use thereon, adds words to the relevant statutes. Such a zoning ordinance does not "encourage" farming, but the opposite. 53 P.S. § 10603(h). If mulch must be produced only on the farm where it is used, then there is less land available for farming. A narrow reading of the protections set forth in the Municipalities Planning Code and Right–to–Farm Act renders them meaningless surplusage. It is already the case that municipalities may not use zoning laws to forbid lawful activities, and this applies to any use, including agriculture and forestry. Finally, all doubts must be resolved in favor of the landowner. *Header v. Schuylkill County Zoning Hearing Board*, 841 A.2d 641, 645 (Pa. Cmwlth.2004).

Municipalities may regulate forestry, even though it must be allowed in every district. 53 P.S. § 10603(f) (stating that "[z]oning ordinances may not unreasonably restrict forestry activities"). The municipality may, for example, use dimensional requirements to regulate where a forestry activity is done. Municipalities may restrict agricultural operations that have a "direct adverse effect" on the public. 53 P.S. § 10603(h). However, the elimination of the production of mulch from the Extraction District was not necessary to protect the public, and Tinicum Township did not contend that it was so necessary.

---

**6.** "Forestry" is defined as "the management of forests and timberlands when practiced in accordance with accepted silvicultural principles, through developing, cultivating, harvesting, transporting and selling trees for commercial purposes, which does not involve any land development." 53 P.S. § 10107(a). Notably, Landowners "harvest" tree by-products from the surrounding area, "transport" them to their property and then "sell" their mulch at "market." 53 P.S. § 10107(a).

*Gaspari* is dispositive. The Supreme Court has defined mulch production to be an agricultural operation, whether its raw materials consist of corn cobs and hay or tree roots and branches. Landowners use tree by-products and, thus, are engaged in the silvicultural "branch of farming." *Gaspari,* 139 A.2d at 548.[7] Because Landowners' mulching operation does not *directly* harm the public, it cannot be restricted from the Extraction District. Because it is a forestry activity, it may be regulated, but not excluded, from the Extraction District.

I would reverse the trial court.

Judge SIMPSON and Judge McCULLOUGH join in this dissenting opinion.

**7.** An "agricultural operation" is "an enterprise that is actively engaged in the commercial production and preparation for market of ... silvicultural ... crops and commodities." 53 P.S.