# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Balady Farms, LLC, | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| Paradise Township Zoning Hearing | : | |
| Board | : | |
| | : | |
| v. | : | |
| | : | No. 171 C.D. 2016 |
| Paradise Township | : | Argued: September 13, 2016 |


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                  HONORABLE P. KEVIN BROBSON, Judge (P.)
                  HONORABLE ANNE E. COVEY, Judge


OPINION BY
JUDGE COVEY                                          FILED: October 4, 2016


Balady Farms, LLC (Balady Farms) appeals from the York County Common Pleas Court's (trial court) January 11, 2016 order affirming Paradise Township (Township) Zoning Hearing Board's (Board) interpretation of the Township's Zoning Ordinance (Ordinance) to prohibit Balady Farms from operating a commercial poultry processing facility. The sole issue before the Court is whether the Board erred in its interpretation of the Ordinance.

The facts of this case are not in dispute. Balady Farms owns approximately 23 acres[1] of real property located at 380 Moulstown Road in Abbottstown, Pennsylvania (Property), in the Township's Rural Conservation (RC) District. The Property contains ten outbuildings, including an office/residence, a

---

[1] There is a discrepancy in the record as to whether Balady Farms has 23 or 28 acres. Notwithstanding, the total acreage was not a reason for the Board's interpretation.

garage, two storage buildings, four livestock barns and two, two-story poultry barns, as well as fenced grazing areas.

Balady Farms, by and through its owner/manager Hafedh Ali Abbes (Abbes) and two part-time employees, raises cattle, goats, and organic, free-range chickens on the Property. In its poultry barns, Balady Farms raises chicks (delivered about every two weeks) for approximately five to six weeks, at which time they are transported off-site for processing and public sale/consumption. At any one time, there are approximately 28,000 chickens (7,000 chickens on each poultry barn floor) on the Property.

Due to the rising costs of off-site chicken processing, Balady Farms proposed to convert and use the interior of one of the existing storage buildings (approximately 3,200 square feet) to process the chickens raised on the Property. The proposed facility would be fitted with state-of-the-art processing equipment housed entirely within the building. Chicken processing would take place approximately two times per week between 9:00 a.m. and 3:00 p.m. and would meet United States Department of Agriculture (USDA) standards.[2] Balady Farms would hire up to six full-time employees due to its increased operation. Processing by-products and waste would be stored in refrigerated containers, and then regularly removed and transported off-site for recycling by Valley Proteins, Inc.

By September 9, 2014 letter, Balady Farms' professional engineer Eric Johnston, PE (Johnston) sought Township Zoning Officer Wayne Smith's (Smith) interpretation as to whether the Ordinance permitted the proposed conversion and use. *See* Reproduced Record (R.R.) at 6a-16a. On October 13, 2014, Smith

---

[2] Although approximately 40,000 chickens could be slaughtered, cleaned and cut within four to six hours, Balady Farms estimated that it will process approximately 40,000 chickens per year and, thus, it is a small-scale operation. *See* Reproduced Record (R.R.) at 26a. By comparison of "[t]he number of chickens processed by Perdue or Tyson[,] the 40,000 number would not look so large." Balady Farms Br. at 9.

2

concluded: "It would be my opinion that the current zoning does not address and permit a commercial use such as a chicken processing operation." R.R. at 5a. On October 13, 2014, Balady Farms filed an application with the Township seeking the Board's Ordinance interpretation (Application) relative to whether it could add "a chicken processing facility for chickens raised and bred on the farm." R.R. at 1a; *see also* R.R. at 2a-18a. The Township's Planning Commission (Commission) reviewed the Application and submitted comments to the Board. The Board held a hearing on January 21, 2015, at which the Board considered the Commission's comments and testimony provided by Johnston, Smith, Abbes and several local residents who were both for and against the proposed use at the Property. *See* R.R. at 18a-57a. On February 13, 2015, the Board declared that the Ordinance "does not include [Balady Farms'] proposed use as a commercial chicken processing facility."[3] R.R. at 78a. Balady Farms filed an appeal from the Board's decision to the trial court.

After reviewing the Board's record and the parties' briefs and hearing argument, on January 11, 2016, the trial court denied Balady Farms' appeal and upheld the Board's decision. Balady Farms appealed to this Court.[4]

Initially, Section 502A of the Ordinance permits "[a]griculture" uses by right in the Township's RC District. R.R at 144a; *see also* R.R. at 14a. Section 202 of the Ordinance defines "[a]griculture" as

> **[a]n enterprise that is actively engaged in the**
> **commercial production and preparation for market or**

---

[3] Board Chairman Seibert and Board Vice-Chairman Burgard voted in favor of the Ordinance's interpretation to prohibit the proposed use. Board Secretary Eisenhart voted against such an interpretation. *See* R.R. at 95a-96a.

[4] The Township intervened.

"Where, as here, the trial court takes no additional evidence, our scope of review is limited to determining whether the [Board] committed an abuse of discretion or an error of law." *Kohl v. New Sewickley Twp. Zoning Hearing Bd.*, 108 A.3d 961, 967 n.6 (Pa. Cmwlth. 2015). "Whether a proposed use falls within a given category of permitted uses in a zoning ordinance is a question of law." *Galzerano v. Zoning Hearing Bd. of Tullytown Borough*, 92 A.3d 891, 894 (Pa. Cmwlth. 2014).

3

**use of** agricultural, agronomic, horticultural, silivicultural and aquacultural crops and commodities and/or **livestock and livestock products**. The term includes an enterprise that implements changes in production practices and procedures or types of crops, livestock, livestock products or commodities produced consistent with practices and procedures that are normally engaged by farmers or are consistent with technological development within the agricultural industry. . . .

R.R. at 116a (emphasis added). The Ordinance's definition of "livestock" specifically "**includes poultry**." R.R. at 123a (emphasis added). The parties agree that Balady Farms' current operation meets all of the Ordinance's requirements. Therefore, the only question before us is whether the Ordinance's definition of "agriculture" permits Balady Farms to process chickens raised on the Property.

Balady Farms argues that the Board erred by concluding that the Ordinance prohibits the proposed chicken processing facility at the Property. Specifically, Balady Farms claims that the Board and the trial court erred by classifying the proposed operation as a commercial chicken processing facility when, in fact, it would only process chickens raised on the Property. Balady Farms contends that the proposed processing facility meets the Ordinance's definition of "agriculture" and, thus, is a use permitted by right at the Property.

At the Board hearing, Johnston testified to the details of Balady Farms' operation and how the proposed processing operation would satisfy the Ordinance's requirements. Smith agreed that Section 202 of the Ordinance defines "agriculture" to include commercial production and preparation of poultry for market or use, *see* R.R. at 28a-29a, but nevertheless concluded:

> I cannot find anywhere in [the Ordinance's] definitions or in [Section] 1304 under agriculture to match a commercial operation as such. I am not questioning how [Balady Farms operates.] I am looking at the pure fact that I find no reference in there for commercial operations in a chicken processing plant in our zoning.

4

R.R. at 27a.

Commission Chairman Bob Nevins (Nevins) testified that the Commission reviewed the Application at its December 22, 2014 meeting and concluded that "[t]here is no mention in [Section 1304A of the Ordinance] of slaughter house," the proposed use "is not consistent with the [Township's] definition of agriculture," and the processing of chickens "and selling the butcher[ed] meat and meat products on the [P]roperty or off[-]site constitutes a commercial operation and is not an allowed use." R.R. at 29a. Nevins added: "It wasn't unanimous by any means, but it was what the Board felt and we have passed this on to you." R.R. at 29a. Nevins clarified that he was the Commission's lone dissenter, and admitted:

> I know I am going against a lot of people here, but as defined in our Ordinance the processing of . . . poultry to market constitutes a lot of things eggs, feathers, the meat products. It's my belief that our [O]rdinance basically allows this.
>
> . . . . We are interpreting agriculture and the [O]rdinance, in my mind, does seem to . . . allow [this] to exist in this [T]ownship.

R.R. at 30a.

The Board also made a finding that

> Smith wrote to [Balady Farms] on May 1, 2013[5] stating that he believed the current use of the Property, i.e., raising poultry, is compliant with the requirements of the Ordinance. [] Smith went on to say that 'a slaughter house is not a farm operation unless [the owners] are only butchering the animals that are raised there.'

---

[5] Smith's correspondence was issued several months before Balady Farms' October 16, 2013 purchase of the Property. *See* R.R. at 17a; *see also* R.R. at 1a. While the record is unclear that Smith's opinion was in reference to the Property, it does show that it was sent to "Stacey Houck." R.R. at 17a. The record does not reveal why Smith rendered the opinion or whether Stacey Houck is related to Balady Farms. Notwithstanding, the Board specifically found that Smith issued the opinion to "Applicant" which, in the Board's decision, is Balady Farms. R.R. at 68a.

5

R.R. at 71a; *see also* R.R. at 17a.

In reaching its decision, the Board reasoned:

It is important to note that the aforementioned definition of agriculture is substantially similar to the definition of 'agricultural operation,' as that term is defined in the [Pennsylvania Municipalities Planning Code (]MPC[)[6]], 53 P.S. § 10107(a). It is also important to note that while the definition of agriculture within the Ordinance permits the breeding, raising, or keeping of animals in compliance with the terms of Section 1304 [of the Ordinance], it does not specifically permit, nor deny, the processing operation as proposed by [Balady Farms].

Black's Law Dictionary defines 'agriculture' as follows: ''[a]griculture' is broader in meaning than 'farming;' and while it includes the preparation of soil, the planting of seeds, the raising and harvesting of crops, and all their incidents, it also includes gardening, horticulture, viticulture, dairying, poultry, bee raising, and ranching.' Black['s] Law Dictionary 16c (10th ed. 2014). Similarly, Merriam-Webster's Dictionary defines 'agriculture' as 'the science, art, or practice of cultivating the soil, producing crops, and raising livestock and in varying degrees the preparation and marketing of the resulting products.' *Agriculture Definition*, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/agriculture (last visited February 9, 2015). Although these definitions are not binding on the Board, they do offer some persuasive guidance to support the Board's interpretation of agriculture.

---

[6] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202. Section 107 of the MPC defines "agricultural operation" as

an enterprise that is actively engaged in the commercial production and preparation for market of . . . livestock and livestock products . . . . The term includes an enterprise that implements changes in production practices and procedures or types of . . . livestock, livestock products . . . produced consistent with practices and procedures that are normally engaged by farmers or are consistent with technological development within the agricultural industry.

53 P.S. § 10107.

The Board must look to the plain language of the definition of agriculture in the Ordinance, as well as the purpose of the Ordinance in general, which is to preserve the quality of agricultural lands, 'they being the Township's most important natural resource.' Ordinance § 102(A). The Board is cognizant of the fact that the agricultural industry is undergoing technological development, whereby farmers are seeking to maximize productivity in an otherwise down-economy. The plain language of the Ordinance, however, emphasizes that agriculture is the production and preparation of livestock and livestock products *which are consistent with the practices and procedures that are normally engaged in by farmers. Id.* (emphasis added). Accordingly, the Board must decide first whether the commercial processing of chickens, i.e, slaughtering, cutting, and cleaning, constitutes the production and preparation for market of livestock and livestock products, and second, that even if the processing was production and preparation, whether such activities are those which are consistent with the procedures that are normally engaged in by farmers in [the] Township.

Even assuming [Balady Farms'] proposed slaughter, cutting, and cleaning of chickens is agriculture, it would fall under the definition of 'intensive agriculture,' a use that is not permitted by right or Special Exception in the [RC] District. In fact, 'intensive agriculture' is only permitted in the Agricultural Zoning District by Special Exception. From the above, it is clear that the Board of Supervisors, the legislative body that drafted the Ordinance, intended the purpose of the [RC] District to protect, among other things, groundwater and surface water, woodlands, and open space. To that end, a processing operation does not fit into the definition of 'agriculture' set forth in the Ordinance.

Based on the foregoing, the Board is of the opinion that the Ordinance's definition of agriculture does not include the commercial processing of poultry. In coming to this interpretation of the definition of 'agriculture,' the Board must rely on the history and heritage of agriculture within [the] Township. In the Board's opinion, 'processing' livestock and livestock products is not 'preparation and production for market' of livestock and livestock products. To the contrary, the preparation and production of livestock and livestock products deals more with getting the livestock

7

and livestock products ready to be transferred to a processing facility.

An important example came from the comments of Mr. Craumer, a [] Township farmer.[7]  Mr. Craumer raises cattle and ships them to a processing facility to be processed for consumption by the end consumer.  Accordingly, the 'preparation and production' is the raising, breeding, and keeping of the cattle, then sending them off to be processed for consumption.  To allow [Balady Farms] to process the chickens as [it] proposes would open up the flood gates, whereby any farmer raising any livestock would now be entitled to process that livestock for consumption. Regardless of the state and federal requirements for such an operation, such operation is beyond the definition of 'agriculture' as set forth in the Ordinance.

Of particular importance, the Board cannot identify, nor was any evidence[] presented to show, one farm or farmer in [the] Township, or the surrounding townships . . . that engage in processing.  Processing is a commercial endeavor, and as such, is not an activity normally engaged in by farmers in the area.  Although 'agriculture' does include the commercial production and preparation for market of livestock and livestock products, the Board is of the opinion that such production and preparation does not include processing, as discussed above.  The Board takes into consideration all of the comments made by property owners surrounding the Property, as well as the comments of those in [the] Township who are themselves farmers. Based on those comments, the plain language of the Ordinance, and the supporting definitions set forth above, the Board believes that the proposed use as a commercial chicken processing facility is not included within the term 'agriculture' as that term is defined in the Ordinance.

For these reasons, the Board determines that the Ordinance's definition of 'agriculture' does not include the commercial processing of chickens.

R.R. at 75a-78a.

_____

[7] Notably, Mr. Craumer is also on the Township's Board of Supervisors.  *See* R.R. at 42a-43a.

Based upon the Board's record, the parties' briefs and argument, the trial court held:

> In evaluating the plain language used in the [O]rdinance, we do not find that the [Board] committed a manifest abuse of discretion or error of law in finding that while raising chickens certainly falls within the definition of agriculture, a large[-]scale processing enterprise takes the business of Balady Farms out of the definition of agriculture and ultimately makes the business a commercial endeavor. We do not find that it is a misapplication of law or against the weight of the evidence for the [Board] to find that a slaughtering and processing enterprise that may process an estimated 40,000 chickens per year is not a business in which most farmers engage, and that based on all the evidence presented, it falls outside the definition of agriculture.

R.R. at 108a.

> The primary objective of statutory interpretation is to determine the intent of the enacting legislation. Section 1921 of the Statutory Construction Act of 1972 (Act), 1 Pa.C.S. § 1921. In pursuing that end, we are mindful that a **statute's plain language generally provides the best indication of legislative intent and, thus, statutory construction begins with examination of the text itself**. *Malt Beverages Distrib[s.] Assoc['n] v. Liquor Control B[d.]*, 918 A.2d 171, 176 (Pa. Cmwlth. 2007) (*en banc*), *aff'd . . .* 974 A.2d 1144 ([Pa.] 2009). In reading the plain language of a statute, '[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage.' Section 1903(a) of the Act, 1 Pa.C.S. § 1903(a).

*Kohl v. New Sewickley Twp. Zoning Hearing Bd.*, 108 A.3d 961, 968 (Pa. Cmwlth. 2015) (emphasis added). Moreover, "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). This Court has declared that "[t]he rules of statutory construction apply to ordinances as well as statutes." *Kohl*, 108 A.3d at 968 (quoting *In re Holtz,* 8 A.3d 374, 378 (Pa. Cmwlth. 2010)).

9

Here, the parties agree that Section 202 of the Ordinance does not expressly prohibit Balady Farms' proposed chicken processing facility. *See* Board Br. at 14 ("[T]he Ordinance does not specifically . . . deny[] the processing operation."); *see also* Smith testimony, R.R. at 27a. Rather, Section 202 of the Ordinance defines "[a]griculture," in relevant part, as [a]n enterprise that is **actively engaged in the commercial production and preparation for market or use of** . . . [**poultry**] **and** [**poultry**] **products**." R.R. at 116a (emphasis added). However, the Ordinance does not specifically define "commercial," "production" or "preparation." Key to interpreting the Ordinance's meaning is determining what the Township intended by *those* words/phrases.

Section 201 of the Ordinance states, in pertinent part: "Words, phrases, and terms not herein defined shall be used in their ordinary context, unless otherwise specified herein." R.R. at 115a. Under Pennsylvania law, when defining ordinance terms, "we may look at statutes, regulations, or dictionaries for assistance." *Hartman v. Zoning Hearing Bd. of Cumru Twp.*, 133 A.3d 806, 810 (Pa. Cmwlth. 2016).

*Merriam-Webster's Collegiate Dictionary* (11th ed. 2004)[8] defines "commercial," in relevant part, as follows:

> **1 a** (1) : occupied with or engaged in commerce or work intended for commerce . . . (2) : of or relating to commerce . . . (3) : characteristic of commerce . . . (4) suitable, adequate, or prepared for commerce . . . **2 a** : viewed with regard to profit . . . **b** : designed for a large market . . . .

*Id.* at 249. "Commerce" is defined in *Black's Law Dictionary* (9th ed. 2009) as "[t]he exchange of goods and services, esp. on a large scale involving transportation between cities, states, and nations." *Id.* at 304. "Production" is defined, in pertinent part, as "the making of goods available for use[.]" *Merriam-Webster's* at 991.

---

[8] *Black's Law Dictionary* does not specifically define "commercial," "production" or "preparation."

10

"Preparation" is defined, in part, as "the action or process of making something ready for use or service or of getting ready for some occasion, test, or duty . . . a preparatory act or measure[.]" *Id.* at 980. Based upon the above words' "ordinary context", Balady Farms' proposed processing of its chickens on the Property falls within the Township's definition of "agriculture."[9] R.R. at 115a, 116a.

The Board ruled that in determining whether Balady Farms' proposed use was permitted the use also had to be "consistent with the procedures that are normally engaged by farmers in [the] Township." R.R. at 77a. We also disagree with the Board's imposition of this requirement. Section 202 of the Ordinance states that "[t]he term ['agriculture'] **includes an enterprise that implements changes in production practices and procedures** or types of . . . livestock [or] livestock products . . . produced **consistent with practices and procedures that are normally engaged by farmers or are consistent with technological development within the agricultural industry**." R.R. at 116a (emphasis added). The term "includes" denotes that the Ordinance further defined the term, rather than created an additional requirement. *Velocity Express v. Pa. Human Relations Comm'n*, 853 A.2d 1182,

---

[9] The Board's statement that "[e]ven assuming [Balady Farms'] proposed slaughter, cutting, and cleaning of chickens is agriculture, it would fall under the definition of 'intensive agriculture,'" is without foundation. R.R. at 77a. Section 202 of the Ordinance defines "intensive agriculture" as:

> The raising of livestock or poultry involving an average of 2 or more animal equivalent units of live weight of livestock or poultry per acre of lot area on an annualized basis. An animal equivalent unit is 1,000 pounds live weight of livestock or poultry animals, on an annualized basis, regardless of the actual number of individual animals comprising the unit. These units shall be calculated as provided under [what is referred to as] the PA Nutrient Management Act[, 3 Pa.C.S. §§ 501-522,] and accompanying regulations. This definition is based on acreage of a lot and not acreage available for disposal of wastes.

R.R. at 122a. We acknowledge that intensive agriculture is not a use permitted by right in the RC District. However, no evidence was presented to the Board to establish that Balady Farms' proposed processing meets this definition.

1186 (Pa. Cmwlth. 2004) (the General Assembly's use of word "includes" before a specific list means the list plus others of same general kind or class).

In addition, if the Township intended for the terms "farmers" and "agricultural industry" to be limited, as the Board suggests, to just the Township or its immediately surrounding communities, it could have done so. In the absence of such restriction, the fact that Mr. Craumer and other Township farmers send their livestock off-site for processing does not here limit Balady Farms' right to process chickens on the Property.

Further, there is nothing in this record to support the Board's conclusion that such interpretation offends the RC District's purpose

> to protect those areas of the Township that have special value due to scenic natural beauty and unique natural environments and those areas that have natural features that are important to a clean and sustainable environment. The following objectives of this zoning district support its overall purpose:
>
> A. To protect the supply and quality of groundwater and surface water.
>
> B. To protect woodlands[.]
>
> C. To preserve watersheds, stream corridors, floodplains, wetlands, and recharge areas.
>
> D. To protect steep slopes and ridgelines.
>
> E. To preserve natural wildlife habitats.
>
> F. To prevent deterioration of air quality.
>
> G. To preserve open space.

R.R. at 144a.

Finally, notwithstanding the Board's and the Township's representations, this Court's decision in *Tinicum Township v. Nowicki*, 99 A.3d 586

12

(Pa. Cmwlth. 2014), does not control our decision in the instant case.  Therein, the zoning board reviewed whether the property owner's on-site mulching activity, whereby raw materials were transported onto the property, ground and then transported off the property to buyers was a permitted "agricultural operation" under Section 107 of the MPC.  The Tinicum Township zoning board used the following analogy to support its conclusion that the operation was not a permitted use:

> If a farmer raises sheep and shears the wool and then sells the wool to a factory which knits that wool into sweaters, the processing of the wool into sweaters at the factory is not an agricultural use but is a manufacturing use.  The hauling of wood produced elsewhere onto the site for further processing is not an agricultural use . . . .

*Tinicum Twp.*, 99 A.3d at 588.  The trial court agreed with the board "because the raw materials from which the mulch was made **did not originate from the** [p]**roperty** and none of the resultant mulch was used on the [p]roperty."  *Id.* at 589 (emphasis added).  This Court upheld the trial court's order, concluding that "in order to qualify as [] an agricultural operation . . . as defined by Section 107 of the MPC . . . , the use in question **must have some connection to or utilization of the land itself** for production of trees [or] livestock . . . ."  *Id.* at 591 (emphasis added).  Here, because the chickens that Balady Farms intends to process at its proposed facility would be those raised at the Property, they clearly "have some connection to or utilization of the [Property]" and, thus, *Tinicum Township* is distinguishable.  *Id.*

In reaching our conclusion, we acknowledge that "[a board's] interpretation of its own zoning ordinance is entitled to great deference and weight." *Hafner v. Zoning Hearing Bd. of Allen Twp.*, 974 A.2d 1204, 1210 (Pa. Cmwlth. 2009).

> **However, a zoning board** is not a legislative body, and it **lacks authority to modify or amend the terms of a zoning ordinance**.  '[Z]oning boards . . . **must not impose**

13

> **their concept of what the zoning ordinance should be**, but rather their function is only to enforce the zoning ordinance in accordance with the applicable law.' Thus, the [**ZBA**] **is required to apply the terms of the Zoning Ordinance <u>as written</u>** rather than deviating from those terms based on an unexpressed policy.

*Greth Dev. Grp., Inc. v. Zoning Hearing Bd. of Lower Heidelberg Twp.*, 918 A.2d 181, 187 (Pa. Cmwlth. 2007) (citation omitted; emphasis added) (quoting *Ludwig v. Zoning Hearing Bd. of Earl Twp.,* 658 A.2d 836, 838 (Pa. Cmwlth. 1995)).

> The Board also has an **obligation to construe the words of an ordinance as broadly as possible to give the landowner the benefit of the least restrictive use** when interpreting its own Zoning Code. *Albert v. Zoning Hearing B[d.] of N[.] Abington T[wp.],* . . . 854 A.2d 401, 405 ([Pa.] 2004); *Church of the Saviour v. Tredyffrin T[wp.] Zoning Hearing B[d.],* . . . 568 A.2d 1336, 1338 ([Pa. Cmwlth.] 1989). **Any doubt must be interpreted in favor of the landowner**. *Kissell v. Ferguson T[wp.] Zoning Hearing B[d.],* 729 A.2d 194, 197 (Pa. Cmwlth. 1999). 'It is an **abuse of discretion for a [b]oard to narrow the terms of an ordinance and further restrict the use of property**.' *Church of the Saviour,* 568 A.2d at 1338. 'While the legislative intent of the governing body which enacted the ordinance is of primary concern when interpreting a zoning ordinance, **the letter of the ordinance is not to be disregarded under the pretext of pursuing its spirit**.' *Borough of Fleetwood v. Zoning Hearing B[d.] of Borough of Fleetwood,* . . . 649 A.2d 651, 656 ([Pa.] 1994); *see Beers ex rel. P/O/A Beers v. Zoning Hearing B[d.] of Towamensing T[wp.],* 933 A.2d 1067, 1069 (Pa. Cmwlth. 2007).

*Riverfront Dev. Grp., LLC v. City of Harrisburg Zoning Hearing Bd.*, 109 A.3d 358, 366 (Pa. Cmwlth. 2015) (emphasis added).

Moreover, the General Assembly has enacted extensive legislation to protect the Commonwealth's agricultural operations. For example, Section 603(h) of the MPC states, in pertinent part:

14

> Zoning ordinances **shall encourage the** continuity, **development and viability of agricultural operations**. Zoning ordinances **may not restrict** agricultural operations or **changes to or expansions of agricultural operations** in geographic areas where agriculture has traditionally been present unless the agricultural operation will have a direct adverse effect on the public health and safety.

53 P.S. § 10603(h) (emphasis added).

In Section 1 of the Act commonly referred to as the Right to Farm Act,[10] the General Assembly precluded nuisance actions against existing farms by encroaching residential uses in an effort "to conserve and protect and encourage the development and improvement of its agricultural land **for the production of food and other agricultural products**." 3 P.S. § 951 (emphasis added). To that end,

> Section 3 of the [Right to Farm Act] provides that every municipality that defines or prohibits a public nuisance **shall exclude from that definition any agricultural operation conducted in accordance with normal agricultural operations** so long as the operation does not have a direct adverse effect on the public health and safety.

*Commonwealth v. Richmond Twp.*, 975 A.2d 607, 617 (Pa. Cmwlth. 2009) (emphasis added). "Normal agricultural operations" are defined in Section 2 of the Right to Farm Act as:

> **The activities, practices, equipment and procedures that farmers adopt, use or engage in the production and preparation for market of poultry**, livestock **and their products** and in the production, harvesting and preparation for market or use of agricultural, agronomic, horticultural, silvicultural and aquacultural crops and commodities and is:
>
> (1) not less than ten contiguous acres in area; or
>
> (2) less than ten contiguous acres in area but has an anticipated yearly gross income of at least $10,000.

---

[10] Act of June 10, 1982, P.L. 454, *as amended*, 3 P.S. §§ 951-957.

The term **includes new activities, practices, equipment and procedures consistent with technological development within the agricultural industry**. Use of equipment shall include machinery designed and used for agricultural operations, including, . . . those items of agricultural equipment and machinery defined by [Section 2 of] the [A]ct of . . . known as the Farm Safety and Occupational Health Act[, 3 P.S. § 1902].[11] Custom work shall be considered a normal farming practice.

3 P.S. § 952 (emphasis added).

In Chapter 3 of the Agriculture Code, commonly referred to as the Agricultural Communities and Rural Environmental Act (ACRE or Act 38),[12] the General Assembly likewise restricts "local regulation of normal agricultural operations," as defined in Section 2 of the Right to Farm Act. 3 Pa.C.S. § 311. Our interpretation of the term "agriculture" used in the Ordinance in this case is consistent with these statutes intended to protect the Commonwealth's agricultural operations.

For all of the above reasons, we hold that Balady Farms' proposed "addition of a chicken processing facility for chickens raised and bred on the farm," R.R. at 1a, falls squarely within the Township's definition of "agriculture" and, thus, is permitted as of right in the Township's RC District.

Because the Board erred in its interpretation of Section 202 of the Ordinance, we reverse the trial court's order.

_____
ANNE E. COVEY, Judge

---

[11] Act of December 12, 1994, P.L. 944, 3 P.S. §§ 1901-1915. Although the Farm Safety and Occupational Health Act (Act) is intended to establish farm safety and health programs, and its definitions are limited to that context, we recognize that Section 2 of the Act notably defines "agricultural production" as "[t]he **production for commercial purposes of** . . . **livestock and livestock products**. The term **includes the processing or retail marketing of such** . . . **livestock or livestock products if more than 50% of the processed or merchandised products are produced by the farmer**." 3 P.S. § 1902 (emphasis added).

[12] 3 Pa.C.S. §§ 311-318.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Balady Farms, LLC,                           :
                Appellant      :
                                    :
              v.                    :
                                    :
Paradise Township Zoning Hearing   :
Board                                        :
                                    :
              v.                    :
                                    :   No. 171 C.D. 2016
Paradise Township                            :

## O R D E R

AND NOW, this 4th day of October, 2016, the York County Common Pleas Court's January 11, 2016 order is reversed.

_____
ANNE E. COVEY, Judge