# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Barbara Pennypacker, Kelly : 
Porterfield, Leona Lundy, Dana : 
McNaughton, Joseph Homan, Galen : 
McWilliams, Edwin Lash, Shannon : 
Jones, Michael Costello, Dorothy : 
Evans Aylard, Kelli Hoover, Andrew : 
McKinnon, Shannon Cover, : 
Katherine G. Watt and Smita Bharti : 
: 
v. : No. 1327 C.D. 2016
: Argued: March 6, 2017
Ferguson Township : 
: 
v. : 
: 
Springton Pointe, LP, : 
Appellant : 

BEFORE: HONORABLE ROBERT SIMPSON, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                    **FILED:  May 17, 2017**

Before this Court is the appeal brought by Springton Pointe, LP (Developer), of the July 18, 2016 order of the Court of Common Pleas of Centre County (Trial Court) reversing the November 17, 2015 approval by the Ferguson Township Board of Supervisors (Board) of Developer's final planned residential development (PRD) plan for the construction of 268 dwelling units to be known as the "Cottages at State College."  In appealing to this Court, Developer has preserved its challenge to the Trial Court's March 16, 2016 order denying

Developer's motion to quash the land use appeal brought by neighboring landowners Barbara Pennypacker, Kelly Porterfield, Leona Lundy, Dana McNaughton, Joseph Homan, Galen McWilliams, Edwin Lash, Shannon Jones, Michael Costello, Dorothy Evans Aylard, Kelli Hoover, Andrew McKinnon, Shannon Cover, Katherine G. Watt and Smita Bharti (collectively Objectors). For the following reasons, we vacate the Trial Court's July 18, 2016 order, reverse the Trial Court's March 16, 2016 order denying Developer's motion to quash and remand this matter to the Trial Court to issue an order quashing Objectors' land use appeal.[1]

On October 1, 2014, Developer submitted a Tentative Plan to the Board for a PRD comprised of single-family detached, single-family semi-detached and single-family attached dwelling units. Following a March 2, 2015 vote, the Board issued a March 17, 2015 decision approving the Tentative Plan subject to conditions that were subsequently accepted by Developer. On March 3, 2015, Developer submitted its Final Plan, which Ferguson Township (Township) representatives reviewed and annotated with a series of comments issued between March and October of 2015. On November 6, 2015, Developer submitted a Revised Final Plan (Final PRD Plan). The Final PRD Plan was voted on by the Board on November 16, 2015, and an approval subject to conditions was issued on November 17, 2015; the conditions were accepted by the Developer on November 27, 2015.

The Final PRD Plan spans roughly 44 acres of land, including two separate tax parcels zoned under the Ferguson Township Zoning Ordinance

---

[1] Our scope of review is limited to determining whether the Trial Court committed an abuse of discretion or an error of law. *Ligo v. Slippery Rock Township*, 936 A.2d 1236, 1241 n.5 (Pa. Cmwlth. 2007).

(Zoning Ordinance) for multi-family residential use (R4) and an additional parcel zoned for Rural Agricultural use (RA). The two parcels zoned R4 are 15.180 acres (No. 24-04-76A) and 22.864 acres (No. 24-04-76) for a total of 38 acres; the parcel zoned RA is 5.5 acres (No. 24-04-94). The Final PRD Plan was submitted with a Subdivision and Lot Consolidation Plan that joins the 22.864 acres zoned R4 with the 5.5 acres zoned RA into one lot but leaves in place the underlying RA zoning for the consolidated 5.5 acres. Under the Township's PRD Ordinance, a PRD is not permitted in land zoned RA; the portion of the consolidated lot zoned RA remains excluded from the PRD and will be used solely for stormwater management for the PRD. The stormwater management facilities primarily include a large detention basin, an infiltration basin and a spreader.

Objectors appealed the November 17, 2015 Final PRD Plan approval by the Board to the Trial Court on December 15, 2015 on the grounds that the Final PRD Plan did not comply with the Zoning Ordinance, that the Board's approval was an abuse of discretion and an error of law, and that the Board's approval violated Objectors' rights under the Environmental Rights Amendment to the Pennsylvania Constitution. Developer filed a motion to quash the appeal on January 25, 2016. In its motion to quash, Developer argued that Objectors waived their right to appeal the Final PRD Plan approval because Objectors failed to assert in their Notice of Appeal that the Final PRD Plan deviated from the Tentative Plan and because Objectors did not appeal from the Board's Tentative Plan approval. In response to Developer's motion to quash, Objectors argued that because the Tentative Plan included Condition XX, which required that "[t]he Final PRD Plan shall comply with all other Township Ordinances," failure of the Final PRD Plan to comply with the Zoning Ordinance constituted a deviation from the Tentative Plan, and thus the appeal was timely.

3

On March 16, 2016, the Trial Court issued an opinion and order denying Developer's motion to quash. The Trial Court concluded that the appeal was timely because the Final PRD Plan did not comply with the Zoning Ordinance and, therefore, did not comply with Condition XX attached to the Board approval of the Tentative Plan. Following submission of briefs, the Trial Court heard argument on the merits of Objectors' appeal on July 13, 2016. The Trial Court issued a decision and order on July 18, 2016 reversing the Board. Developer appealed the Trial Court's order to this Court. Before this Court, Developer initially argues that the Trial Court erred in denying its motion to quash Objectors' appeal. We agree.

Article VII of the Municipalities Planning Code[2], 53 P.S. §§ 10701-10713, provides a municipal governing body with the authority to establish conditions and standards for the development of PRDs. Sections 701 and 702 of the MPC, 53 P.S. §§ 10701-10702. A PRD is "a larger, integrated planned residential development which does not meet standards of the usual zoning districts," and the purpose of a PRD ordinance is to "create a method of approving large developments which overrides traditional zoning controls and permits the introduction of flexibility into the design of larger developments." *Kang v. Supervisors of Township of Spring*, 776 A.2d 324, 328 (Pa. Cmwlth. 2001).

Article VII sets forth a procedure for approval of PRDs, first providing for the method of approval of a tentative plan in Section 707, 53 P.S. § 10707, and second providing for the method of approval of a final plan in Section 711, 53 P.S. § 10711. In addition to the two-step process set forth in Sections 707 and 711, Section 710 addresses the status of a PRD plan following tentative plan

---

[2] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101 – 11202.

approval. 53 P.S. § 10710. When read together, the three sections make clear that the critical step in the PRD process is tentative plan approval and that a municipality's authority to deny final plan approval is limited to instances where the final plan contains deviations from the tentative plan, except where those deviations are required to comply with conditions attached to tentative plan approval. 53 P.S. § 10710. The importance of tentative plan approval is further underscored by Section 914.1 of the MPC[3], which limits an appeal by an interested party other than the landowner from final plan approval where no appeal from tentative plan approval had been taken unless "the final submission substantially deviates from the approved tentative approval." 53 P.S. § 10914.1.

In their Notice of Land Use Appeal, Objectors did not allege that the Final PRD Plan deviates from the Tentative Plan. Instead, Objectors alleged that Developer's Final PRD Plan violates the Zoning Ordinance and the MPC by permitting the stormwater management facilities to be located in the RA district and that the Board usurped the function of the Ferguson Township Zoning Hearing Board by granting a *de facto* variance. (Objectors' Notice of Appeal at 9-10.) Objectors raised their argument that approval of the Final PRD Plan should be reversed because it deviates from the Tentative Plan for the first time in their response to Developer's motion to quash, stating:

> [Developer] argues that the appeal should be quashed because there is no allegation that the [Final PRD Plan] deviated from the approved [T]entative [P]lan. The tentative approval incorporated Conditions of Approval, which are a part of the record in this case. Item XX of the conditions requires that "[t]he Final PRD [Plan] shall comply with all other Township Ordinances." Contrary to this condition, as set forth in the Land Use Appeal, the

---

[3] Added by the Act of December 21, 1988, P.L. 1329.

5

> Final PRD [P]lan violates the [Zoning Ordinance] by allowing a use not permitted in the RA District.

(Objectors' Brief in Opposition to Motion to Quash at 4.) Objectors contend that the distinction between their claim as stated in their Notice of Appeal and their claim as stated in their Brief in Opposition to Developer's Motion to Quash is a distinction without a difference and an attempt by Developer to raise form over substance. We disagree and conclude that Objectors waived their right to raise the issue of whether the Final PRD Plan substantially deviates from the Tentative Plan by failing to raise this issue in their Notice of Appeal contrary to the express mandate of the MPC.

The MPC expressly mandates that no appeal from final approval of a PRD plan is permitted where an appeal from tentative plan approval was not taken, except where the final plan deviates from the tentative plan. Objectors did not allege that the Final PRD Plan deviated from the Tentative Plan in their Notice of Appeal and, as a result, they failed to state a claim for which relief can be granted. Section 1003-A of the MPC[4] provides that "[l]and use appeals shall be entered as of course by the prothonotary or clerk upon the filing of a land use appeal notice which concisely sets forth the grounds on which the appellant relies." 53 P.S. § 11003-A(a). Objectors failed to concisely set forth the grounds upon which their appeal relied because they did not claim that the Final PRD Plan deviated from the Tentative Plan, which is the only ground for appeal available to them under the MPC. The Courts of this Commonwealth have repeatedly held that the language in Section 1003-A is mandatory and that an appellant's failure to state the grounds for appeal in the notice of appeal results in waiver. *Newtown Square East, L.P. v.*

---

[4] Added by the Act of December 21, 1988, P.L. 1329.

6

*Township of Newtown*, 38 A.3d 1008, 1017 (Pa. Cmwlth. 2011); *Therres v. Zoning Hearing Board of Borough of Rose Valley*, 947 A.2d 226, 233 (Pa. Cmwlth. 2008); *Perin v. Board of Supervisors of Washington Township*, 563 A.2d 576, 578 (Pa. Cmwlth. 1989).

Moreover, even if we were to accept that the Notice of Appeal sufficiently raised the issue of deviation in the Final PRD Plan from Condition XX attached to the Board approval of the Tentative Plan, Developer's motion to quash would still be granted because Objectors' claim is dependent upon an interpretation of the Zoning Ordinance rejected by the Board when it granted Tentative Plan approval. Consequently, Objectors lost their opportunity to challenge the Board's interpretation of the Zoning Ordinance when they failed to appeal the Tentative Plan approval.

In establishing the procedure for tentative plan approval of a PRD, the MPC states in Section 707:

> In order to provide an expeditious method for processing a development plan for a planned residential development under the provisions adopted pursuant to the powers granted herein, and to avoid the delay and uncertainty which would arise if it were necessary to secure approval, by a multiplicity of local procedures, of a plat of subdivision as well as approval of a change in the zoning regulations otherwise applicable to the property, it is hereby declared to be in the public interest that all procedures with respect to the approval or disapproval of a development plan for a planned residential development and the continuing administration thereof shall be consistent with the following provisions:
> ***
> (3) All planning, zoning and subdivision matters relating to the platting, use and development of the planned

7

residential development and subsequent modifications of the regulations relating thereto, to the extent such modification is vested in the municipality, shall be determined and established by the governing body or the planning agency.

53 P.S. § 10707. When issuing a decision regarding the grant or denial of tentative plan approval, the MPC further requires that the governing body "shall set forth with particularity in what respects the development plan would or would not be in the public interest," including findings of fact that address, among other things, "the extent to which the development plan departs from zoning and subdivision regulations otherwise applicable to the subject property, including but not limited to density, bulk and use, and the reasons why such departures are or are not deemed to be in the public interest." Section 709(b)(2) of the MPC, 53 P.S. § 10709(b)(2).

In the instant matter, the Board issued a March 17, 2015 written decision in support of its March 2, 2015 vote to approve Developer's Tentative Plan. The approval contained a statement of why approval of the Tentative Plan was in the public interest despite failure of the Tentative Plan to comply with zoning and subdivision and land use ordinances otherwise applicable, including the following relevant finding of fact:

> **Placement of stormwater management facilities in a 5.5 acre parcel zoned RA is accessory to the primary residential use located in the PRD. This accessory use is contingent upon approval of The Cottages Subdivision and Lot Consolidation Plan.** Balancing the placement of the PRD stormwater facilities in the RA zoned parcel against the type of stormwater facilities that would be required with typical multi-story R-4 development would not result in any more favorable stormwater management. The stormwater facilities in the

8

RA zoning district have additional safety design requirements to reduce (a) basin failures, (b) require PRD property owner to be responsible for adjacent downstream property impacted by either the PRD stormwater facility not being properly maintained and/or a basin failure in the judgment of the Township Engineer. This exceeds the requirements under the underlying R-4 zoning district.

(Tentative Plan approval, Findings of Fact (F.F.) ¶2(g)(6) (emphasis added); *see also* Tentative Plan approval, Condition III.j, XII.a, XX.) This finding is important for two reasons. First, the deviation noted by the Board is from the regulations governing stormwater management in the R4 District and the finding by the Board is that this deviation provides greater, not lesser, stormwater management controls. Second, the Board concluded that the location of the stormwater management facilities in the RA zoned parcel is an **accessory use** under the Zoning Ordinance because the Tentative Plan contemplates approval of the accompanying Subdivision and Lot Consolidation Plan. This conclusion is fatal to Objectors' appeal.

Objectors contend that under the Zoning Ordinance, land zoned RA cannot be used as an accessory use for stormwater facilities serving a primary use that is not permitted in the RA, and that because PRDs are not permitted in the RA district, use of the RA parcel for stormwater facilities serving the PRD is not permitted by the Zoning Ordinance. Objectors contend, therefore, that Developer did not satisfy Condition XX attached to the Tentative Plan approval because Condition XX requires that the Final PRD Plan "shall comply with all other Township Ordinances." (Tentative Plan approval, Condition XX.) However, in approving the Tentative Plan, the Board interpreted the placement of stormwater facilities on the RA zoned parcel as a permissible accessory use because the

9

Tentative Plan contemplated approval of Developer's Subdivision and Lot Consolidation Plan merging the R4 and RA parcels. By doing so, the Board concluded that placement of the stormwater facilities on the RA lot did not violate the Zoning Ordinance. As a result, Condition XX does not provide a vehicle for Objectors to challenge placement of the stormwater facilities on the land zoned RA and Objectors lost their right to challenge the Board's interpretation of the Zoning Ordinance as allowing this use of the RA zoned land when they failed to challenge the grant of Tentative Plan approval. Therefore, even if we were to construe Objectors' Notice of Appeal as having sufficiently raised the issue of deviation in the Final PRD Plan from Condition XX attached to the Tentative Plan approval, we would still be required to quash Objectors' appeal for failing to raise their challenge to the interpretation of the Zoning Ordinance made by the Board when granting Tentative Plan approval.

Accordingly, because Objectors violated the express mandate of the MPC by failing to state in their Notice of Appeal from the Board's Final PRD approval how the Final PRD Plan deviated from the Tentative Plan and failed to raise a challenge to the Board's interpretation of the Zoning Ordinance when it granted Tentative Plan approval by appealing the Board's order granting Tentative Plan approval, we vacate the Trial Court's July 18, 2016 order, reverse the Trial Court's March 16, 2016 order denying Developer's motion to quash and remand this matter to the Trial Court to issue an order quashing Objectors' land use appeal.

_____
**JAMES GARDNER COLINS, Senior Judge**

10

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Barbara Pennypacker, Kelly : 
Porterfield, Leona Lundy, Dana :
McNaughton, Joseph Homan, Galen :
McWilliams, Edwin Lash, Shannon :
Jones, Michael Costello, Dorothy :
Evans Aylard, Kelli Hoover, Andrew :
McKinnon, Shannon Cover, :
Katherine G. Watt and Smita Bharti :
                :
        v. : No. 1327 C.D. 2016
                :
Ferguson Township :
                :
        v. :
                :
Springton Pointe, LP, :
              Appellant :

# **O R D E R**

AND NOW, this 17th day of May, 2017, the July 18, 2016 order of the Court of Common Pleas of Centre County in the above-captioned matter is VACATED, the March 16, 2016 order of the Court of Common Pleas of Centre County denying the motion to quash filed by Springton Pointe, L.P. is REVERSED and this matter is REMANDED to the Court of Common Pleas of Centre County to enter an order quashing the land use appeal filed by Barbara Pennypacker, Kelly Porterfield, Leona Lundy, Dana McNaughton, Joseph Homan, Galen McWilliams, Edwin Lash, Shannon Jones, Michael Costello, Dorothy Evans Aylard, Kelli Hoover, Andrew McKinnon, Shannon Cover, Katherine G. Watt and Smita Bharti.

Jurisdiction relinquished.

 

_____
**JAMES GARDNER COLINS, Senior Judge**