IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David R. Baltzer, : 
            Appellant : 
             : 
      v. : 
             : 
Zoning Hearing Board :   No. 20 C.D. 2022
Strasburg Borough :   Submitted: January 27, 2023


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                 FILED:  April 21, 2023

         David R. Baltzer (Baltzer) appeals from the Lancaster County Common Pleas Court's (trial court) December 6, 2021 order denying his appeal from the Strasburg Borough (Borough) Zoning Hearing Board's (ZHB) December 1, 2020 decision (Decision) that denied his appeal from the Borough Zoning Enforcement Officer's (Zoning Officer) July 30, 2020 Enforcement Notice/Notice of Violation of Zoning Ordinance (Enforcement Notice) and his variance application. Baltzer presents two issues for this Court's review: (1) whether the ZHB erred by failing to apply the least restrictive interpretation of relevant undefined terms in the Official Zoning Ordinance of Strasburg Borough (Ordinance) when it upheld the Enforcement Notice; and (2) whether Baltzer's constructed carport complied with the Ordinance. After review, this Court affirms in part and reverses in part.

## Facts

Baltzer owns real property at 246 Julia Avenue, Strasburg, Pennsylvania (Property). The Property is located within the Borough's Residential 2 (R2) Zoning District. The Property is a rectangular lot, 80 feet wide by 120 feet deep, containing a single-family dwelling in which Baltzer has resided since 1990. A former owner had renovated the home by eliminating a portion of the single-car garage attached to the home, leaving the garage only 11 feet deep.

In the early 1990s, Baltzer constructed a shed, 8 feet by 10 feet, at the Property's northeast corner. In 2003, he removed that shed and replaced it with a shed measuring 12 feet by 14 feet. In 2013, Baltzer enlarged the shed toward the center of the Property. Baltzer did not obtain any permits to place, replace, or expand the shed on the Property.

In September of 2019, Baltzer obtained all the necessary permits and Borough approvals to extend the Property's driveway area that sits approximately one foot from the neighboring property line. While expanding the driveway, he replaced an existing retaining wall with a new, similar retaining wall along the driveway's southern edge. The Borough did not inspect the driveway expansion or the new retaining wall after completion.

In July 2020, after obtaining approval from his neighbor south of his residence, Baltzer began constructing a 12-foot-wide carport structure to the south side of his residence. *See* Reproduced Record (R.R.) at 337.[1] The carport's south side consists of four vertical four by six wood supports, approximately nine feet in height, supported by footers. The outer wall of Baltzer's residence is the carport's north side. Baltzer intended the carport to be a permanent structure.

---

[1] The reproduced record page numbers are not followed by a small "a" as required by Pennsylvania Rule of Appellate Procedure 2173 and, for consistency, a small "a" will not be used herein.

On July 30, 2020, the Zoning Officer sent Baltzer the Enforcement Notice[2] stating, in relevant part:

> It has been brought to my attention that you have initiated construction of an addition to your dwelling located at [the Property] in [the] Borough without first obtaining a zoning permit as required by the . . . Ordinance. In addition, I have also learned that a shed has been located on the [P]roperty, and a search of Borough records shows no permit issued for this structure.
>
> The . . . Ordinance requires that a zoning permit, a building permit, and stormwater management approval be obtained before the construction of the addition to the dwelling can be initiated and a shed be located. As such, the construction activity and placement of the shed are deemed to be violations of the . . . Ordinance.
>
> The location of the [P]roperty and the nature of the violations of the [] Ordinance are identified in the enclosed [Enforcement] Notice[]. The intent of this [Enforcement] Notice is not to initiate an action of prosecution, but to seek your voluntary action in properly addressing the issues identified in the [Enforcement] Notice. Your failure to address all items and/or remove the violations within the time periods specified will subject you to further enforcement actions which could result in substantial fines and penalties.

R.R. at 657.

> Therein, the Zoning Officer identified the following specific violations:
>
> **1. Section <u>701.1.</u> [<u>of the Ordinance</u>]: Description of violation and requirements which have not been met**:
>
> [Baltzer] has initiated construction on an addition to the south side of the dwelling and has located a shed at the northeast corner of [the P]roperty [], without first obtaining approved zoning permits. [(<u>Section 701 Violation)</u>].

---

[2] The Zoning Officer's letter is dated July 30, 2020. The Enforcement Notice, referenced therein, is dated July 31, 2020. *See* R.R. at 657; *see also* R.R. at 658-660.

3

Section 701.1. of the [] Ordinance states the following, in part:

*701.1. <u>General Requirements for Zoning</u> Permits — No building, structure, or sign shall be erected, constructed, extended, replaced, demolished, converted, moved, added to or structurally altered, nor shall land, buildings, and structures be put to any use or have the use for which they are used changed, without a Zoning Permit therefore issued by the Zoning Officer.*

The initiation of this construction activity and the shed placement are violations of Section 701.A. of the [] Ordinance and are subject to the receipt of zoning permits.

**2. Section <u>203.7.2.</u> [<u>of the Ordinance</u>]: Description of violation and requirements which have not been met**:

The unauthorized/unapproved construction which has been initiated without a zoning permit encroaches into the required ten (10)[-]foot minimum side yard setback. Documentation accompanying a permit application submitted after the initiation of construction of an addition to the south side of the dwelling indicates that the side yard setback is less than one (1) foot.

The location of the unauthorized/unapproved construction is within the required side yard setback and is a violation of Section 203.7.2. of the [] Ordinance.

R.R. at 659.

Baltzer immediately filed a permit application for the carport structure (Application), which the Zoning Officer denied by July 31, 2020 letter, explaining that the construction violated the Ordinance's minimum 10-foot side yard setback requirement in Section 203.7.2. of the Ordinance. *See* R.R. at 338. On August 5, 2020, Baltzer responded to the Enforcement Notice with a handwritten letter to the Zoning Officer declaring, in pertinent part:

[] The four support posts are the only part of the carport that touches the ground anywhere near the neighbor's property (or at all). Given that they are 4" by 6" treated

4

lumber, they cover a total ground area of just 77 square inches, or just over one half of one square foot.

[] At the time of the repaving and enlarging of my driveway in September of 2019, I researched the [B]orough['s] ordinances closely to be sure that I was in compliance. In doing so[,] I discovered certain definitions and facts which led me to believe that the intended future construction of a carport (a) would not require a building permit and (b) was not subject to the "setback" rules. I now know and understand why I was incorrect with respect to the permit. I would therefore be more than willing to not only obtain and pay for the building permit for the carport, but also for the shed that was mentioned in the letters I received. Although it's been upgraded, there has been a shed in that corner of the property for all of the thirty years I've lived there.

R.R. at 334.

Baltzer explained:

In relation to the setback violation, certain sections of the [] Ordinance led me to believe that what I was planning would not be a violation:

**Section 212.25**[**. of the Ordinance**[3]] defines a structure as "a walled and roofed building[.]" Given that my carport has no walls, it is therefore not a structure, and calls into question whether or not the setback rules even apply in this situation.

**Section 303.2**[**.1. of the Ordinance**] states that "the setback regulations do not apply to: bus shelters[;] telephone booths[;] cornices, eaves, chimneys, steps, canopies, and similar extensions[.]" In searching out the definition of a canopy, I found dictionaries to include examples of construction similar to mine. They also provided a list of synonyms (meaning, of course, words that mean the same thing) for the word "canopy." All of them included the word "roof" as a synonym for "canopy."

---

[3] Section 212.25. of the Ordinance relates only to structures in the Borough's Floodplain District; however, the Property is not located in the Floodplain District.

5

The two sections referred to above led me to believe that I would not be in violation, as I still believe. Logically, what I am building can be considered to be a canopy, is not a structure, and there [sic] not subject to setback regulations.

I hope it's evident that I entered into the carport portion of my project believing that I was committing no violations. In retrospect, I realize that I should have obtained the permit in advance of beginning the carport, just as I did do with the driveway project, and will certainly know to do so in the future.

R.R. at 335.

On August 6, 2020, the Zoning Officer again wrote a letter to Baltzer restating the violations. *See* R.R. at 340-341. Baltzer halted construction on the carport. On August 13, 2020, Baltzer filed an application (Appeal) to the ZHB which included: (1) an appeal from the Zoning Officer's carport structure permit Application denial; (2) an appeal from the violation set forth in the Enforcement Notice due to the encroachment into the side yard setback; (3) a request for a variance, in the alternative, to allow for encroachment into the side yard setback; and (4) an appeal from the violation set forth in the Enforcement Notice for the shed placement in the rear yard without a permit. *See* R.R. at 181-182.

The ZHB conducted a hearing on October 19, 2020, at which Baltzer appeared with counsel and testified. In opposition to Baltzer's Appeal, the Borough presented the testimony of the Zoning Officer, the Borough's Mayor, and a property owner who lives two doors away from Baltzer. On November 16, 2020, the Board voted 5 to 0 to deny Baltzer's Appeal. On or about December 1, 2020, the ZHB issued its Decision which contained findings of fact and conclusions of law.

On December 30, 2020, Baltzer filed a Notice of Appeal in the trial court (Notice of Appeal). On January 19, 2021, the Borough filed a Notice of Intervention. On December 6, 2021, the trial court issued an opinion and order,

6

wherein it concluded that Baltzer had waived his appeal from the Section 701 Violation for failure to obtain permits for the shed by failing to raise that issue in the Notice of Appeal. The trial court also rejected Baltzer's appeal from the Section 701 Violation for failure to obtain a carport construction permit, concluding that a permit was clearly required and never obtained. The trial court also agreed that the carport structure was subject to the Ordinance's 10-foot side yard setback requirement, and it rejected Baltzer's argument that the carport structure was exempt under Section 303.2.1 of the Ordinance as a canopy. Finally, the trial court concluded that the ZHB properly denied Baltzer's variance request because Baltzer did not satisfy the Ordinance's variance criteria. Baltzer appealed to this Court.[4]

## Discussion

### Waiver

Initially, the Borough[5] contends that Baltzer failed to "identify any errors relating to the [ZHB's] decision to uphold the Enforcement Notice for the placement of the shed **or the construction of the carport structure** without a permit" in his Notice of Appeal to the trial court, and accordingly, "[t]he lower court correctly found the issue had been waived due to its omission in the Notice of Appeal." Borough Br. at 12 (emphasis added). Contrary to the Borough's assertion, although the trial court found the "grounds for appeal . . . regarding the shed [we]re waived in accordance with Section 1003-A of the [Pennsylvania Municipalities

---

[4] "Because the trial court took no additional evidence, our review is limited to determining whether the **ZHB** committed an error of law or an abuse of discretion." *DiMattia v. Zoning Hearing Bd. of E. Whiteland Twp.*, 168 A.3d 393, 397 n.2 (Pa. Cmwlth. 2017) (emphasis added). "[Baltzer] pose[s] the questions as whether the trial court erred. Our standard of review, however, pertains to whether the [ZHB], not the trial court, erred or abused its discretion." *In re Appeal of Brickstone Realty Corp.*, 789 A.2d 333, 338 n.2 (Pa. Cmwlth. 2001).

[5] The ZHB did not file a brief with this Court but, instead, notified the Court on September 7, 2022, that it joined in and adopted the Borough's brief in its entirety.

Planning Code[6] (]MPC[),]" **the trial court did not also find the carport construction issue waived**.  R.R. at 673.

> With respect to waiver, this Court has explained:
>
> Section 1003-A[(a)] of the MPC provides that "[l]and use appeals shall be entered as of course by the prothonotary or clerk upon the filing of a land use appeal notice **which concisely sets forth the grounds on which the appellant relies**."  53 P.S. § 11003-A(a). . . .  The [c]ourts of this Commonwealth have repeatedly held that the language in Section 1003-A [of the MPC] is mandatory and that **an appellant's failure to state the grounds for appeal in the notice of appeal results in waiver**.

*Pennypacker v. Ferguson Twp.*, 167 A.3d 209, 213 (Pa. Cmwlth. 2017) (footnote omitted; emphasis added).

> Baltzer's Notice of Appeal included the following grounds for appeal:
>
> The decision of the [ZHB] **in denying** [**Baltzer's**] [**v**]**ariance** [**a**]**pplication** was arbitrary, capricious[,] an abuse of discretion and contrary to law in that:
>
> (a). The [Ordinance] fails to define the following terms: "Canopy", "Carport", "Awning" or "Roof."  [Baltzer] requested a permit for a carport and/or awning and thereafter a [v]ariance to construct the same.  The evidence presented at the [ZHB] [h]earing established that [Baltzer] was entitled to a [v]ariance.
>
> (b). The [ZHB] erred in concluding that [Baltzer] constructed a structure when [Baltzer] in fact constructed an awning which the . . . Ordinance fails to define yet clearly states that the setback regulations do not apply to Accessory or Appurtenant Structures including "canopies and similar extensions" (but fails to define the term "canopies[")].

---

[6] Act of July 31, 1968, P.L. 805, *as amended*, added by Section 101 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 11003-A.

8

(b).[7] Although the [ZHB] made a finding that in Merriam-Webster, the synonyms listed for canopy included the term, "awning", "coiling", "cover", "roof", [and] "tent", the [ZHB] erred in that it failed to apply those definitions to [Baltzer's] proposed structure which is clearly within the scope of the word "carport" or the word "canopy."

(c). Although the [ZHB] made a finding that . . . Merriam-Webster, defines the term "canopy" as "A. a cloth covering suspended over a bed; B. a cover (as of cloth) fixed or carried above a person of high rank or sacred object; C. a protective covering such as 1. The uppermost spreading branchy layer of a forest. 2. Awning, marquee." The [ZHB] erred in that it failed to apply that definition to [Baltzer's] [A]pplication which clearly would allow for the carport as protective covering.

(d). The [ZHB] erred in concluding that the carport structure is more similar to a porch or patio, than it is to a "cornice, eave, chimney, steps, or a canopy."

(e). The [ZHB] erred in concluding that [Baltzer's] [Property] has no topographical irregularities that would make compliance with the Ordinance an unnecessary hardship on [Baltzer].

(f). The [ZHB] erred in concluding that [Baltzer's] [Property] creates an unnecessary hardship unique to his [Property].

(g). Favorable action on [Baltzer's] [A]pplication for a variance would not have any adverse effect on the health, safety, morals or general welfare of the community as defined by the [Ordinance]. And this fact was clearly presented when the adjoining landowner testified that he was pleased with and [had] no objection whatsoever to [Baltzer's] awning and[/]or canopy.

Notice of Appeal at 2-3 (emphasis added).[8]  Clearly, Baltzer did not identify any errors regarding the ZHB's decision upholding the Enforcement Notice with respect

---

[7] The Notice of Appeal is erroneously numbered, including two paragraphs "(b)."
[8] Baltzer did not include a complete copy of the Notice of Appeal in the Reproduced Record.

9

to Baltzer's shed.[9]   Accordingly, the trial court properly concluded that Baltzer waived that issue pursuant to Section 1003-A of the MPC.

## Remaining Issues

This Court acknowledges

that "[a zoning hearing board's] interpretation of its own zoning ordinance is entitled to great deference and weight." *Hafner v. Zoning Hearing Bd. of Allen Twp.*, 974 A.2d 1204, 1210 (Pa. Cmwlth. 2009).

> **However**, **a zoning [hearing] board** is not a legislative body, and it **lacks authority to modify or amend the terms of a zoning ordinance**. ["Z]oning [hearing] boards . . . **must not impose their concept of what the zoning ordinance should be**, but rather their function is only to enforce the zoning ordinance in accordance with the applicable law.["]  Thus, the [zoning hearing board] **is required to apply the terms of the** [] [**o**]**rdinance <u>as written</u>** rather than deviating from those terms based on an unexpressed policy.

*Greth Dev. Grp., Inc. v. Zoning Hearing Bd. of Lower Heidelberg Twp.*, 918 A.2d 181, 187 (Pa. Cmwlth. 2007) (citation omitted; emphasis added) (quoting *Ludwig v. Zoning Hearing Bd. of Earl Twp.*, 658 A.2d 836, 838 (Pa. Cmwlth. 1995)).

---

[9] Baltzer contends that the ZHB "rendered a decision . . . denying [Baltzer's] request for a variance[, but] did not address nor render any decision on [Baltzer's] appeal of the Enforcement Notice." Baltzer Br. at 5.  Contrary to Baltzer's characterization, the ZHB **did** "render [a] decision on [Baltzer's] appeal . . . ." *Id*.  The ZHB denied his appeal.  Further, to the extent that the ZHB's Decision did not clearly discuss his appeal from the Enforcement Notice, Baltzer did not request reconsideration by the ZHB to explicitly address the Enforcement Notice, nor did he include the issue of the ZHB's failure to discuss the Enforcement Notice in its Decision, or otherwise challenge the Enforcement Notice in his Notice of Appeal.

10

*Balady Farms, LLC v. Paradise Twp. Zoning Hearing Bd.*, 148 A.3d 496, 505 (Pa. Cmwlth. 2016).

The *Balady Farms* Court expounded:

> The [zoning hearing b]oard also has an **obligation to construe the words of an ordinance as broadly as possible to give the landowner the benefit of the least restrictive use** when interpreting its own [Ordinance]. *Albert v. Zoning Hearing B[d.] of N[.] Abington T[wp.]*, . . . 854 A.2d 401, 405 ([Pa.] 2004); *Church of the Saviour v. Tredyffrin T[wp.] Zoning Hearing B[d.]*, . . . 568 A.2d 1336, 1338 ([Pa. Cmwlth.] 1989). **Any doubt must be interpreted in favor of the landowner**. *Kissell v. Ferguson T[wp.] Zoning Hearing B[d.]*, 729 A.2d 194, 197 (Pa. Cmwlth. 1999). ["]It is an **abuse of discretion for a** [zoning hearing b]oard to **narrow the terms of an ordinance and further restrict the use of property**.["] *Church of the Saviour*, 568 A.2d at 1338. ["]While the legislative intent of the governing body which enacted the ordinance is of primary concern when interpreting a zoning ordinance, **the letter of the ordinance is not to be disregarded under the pretext of pursuing its spirit**.["] *Borough of Fleetwood v. Zoning Hearing B[d.] of Borough of Fleetwood*, . . . 649 A.2d 651, 656 ([Pa.] 1994); *see Beers ex rel. P/O/A Beers v. Zoning Hearing B[d.] of Towamensing T[wp.]*, 933 A.2d 1067, 1069 (Pa. Cmwlth. 2007).
>
> *Riverfront Dev. Grp., LLC v. City of Harrisburg Zoning Hearing Bd.*, 109 A.3d 358, 366 (Pa. Cmwlth. 2015) (emphasis added).

*Balady Farms, LLC*, 148 A.3d at 505; *see also Kohl v. New Sewickley Twp. Zoning Hearing Bd.*, 108 A.3d 961, 968 (Pa. Cmwlth. 2015) ("[W]here the words of the ordinance are ambiguous, courts construe the ordinance in favor of the landowner.

11

**A zoning ordinance is ambiguous if the pertinent provision is susceptible to more than one reasonable interpretation**, . . . **or when the language is vague, uncertain, or indefinite**." (citation omitted; emphasis added)).

### Application

The Zoning Officer denied Baltzer's Application based on his conclusion that the setback regulation exception in Section 303.2.1 of the Ordinance did not apply. Specifically, the Zoning Officer explained:

> The denial of the [A]pplication is based upon the proposed addition encroaching upon the required side yard setback as stated in Section 203.7.2. of the . . . Ordinance which requires that the minimum side yard setback be ten (10) feet. The plan provided with the [A]pplication indicates a side yard setback of less than one (1) foot.

R.R. at 338.

The ZHB denied Baltzer's Application appeal based, in part, on the following factual findings:

> 27. . . . Section 303.2[.] of the O[rdinance] states that "the setback regulations do not apply to: bus shelters; telephone booths; and cornices, eaves[,] chimneys[,] steps, canopies, and similar extensions[,] but do apply to porches and patios whether covered or not."
>
> 28. In that section, it should be noted that bus shelters and telephone booths are separated by semi-colons and "cornices, eaves, chimneys, steps, canopies and similar extensions" are all separated by commas.
>
> 29. The O[rdinance] does not contain a definition of the word carport or of the word canopy. Since the O[rdinance] does not define these terms, the [ZHB] must look to the common meaning of the word. Merriam-Webster defines canopy as: "A. a cloth covering suspended over a bed; B. a cover (as of cloth) fixed or carried above a person of high rank or sacred object; C. a protective covering such as 1.

12

The uppermost spreading branchy layer of a forest. 2. Awning, marquee."

30. In Merriam-Webster, the synonyms listed for canopy include awning, ceiling, cover, roof, tent.

31. The definitions provided define a canopy more as a cloth, not [a] permanent cover. Because the O[rdinance] separates "cornices, eaves . . ." by only comm[as] as opposed to semi-colons, it requires the [ZHB] to reason that the O[rdinance] held these examples out as being very similar to one another.

32. The carport structure on the [Property] **is much more similar to a porch or patio**, **than it is to a** "**cornice**, **eave**, **chimney**, **steps**, **or a canopy**."

33. The exception to the setback regulation at Section 303.2.1 [of the Ordinance], therefore, does not apply to this [A]pplication.

R.R. at 173-174 (emphasis added).

The ZHB concluded as a matter of law:

1. The O[rdinance] prohibits structures within the side yard setback area. The O[rdinance] defines structure as "any manmade object, including buildings, having an ascertainable stationary location on or in land or water, whether or not affixed to the land." The carport structure meets the O[rdinance] definition of structure.

2. The definition of structure at Section 212.25 of the O[rdinance] does not apply in this instance because the [Property] is not located in the Floodplain District.

3. The exception to setback regulations at Section 303.2.1 of the O[rdinance] does not apply to this structure either. Section 303.2 of the O[rdinance] states that "the setback regulations do not apply to: bus shelters; telephone booths; and cornices, eaves, chimneys, steps, canopies, and similar extensions, that do apply to porches and patios whether covered or not."

4. . . . The O[rdinance] here does not contain a definition of the word "carport" or "canopy". **Merriam-Webster**

13

**defines canopy as**: "A. a cloth covering suspended over a bed; B. a cover (as of cloth) fixed or carried above a person of high rank or sacred object; C. **a protective covering such as** 1. The uppermost spreading branchy layer of a forest. 2. **Awning**, **marquee**." The definitions provided define a canopy more as a cloth, nonpermanent cover. **The carport structure on the** [**Property**] **is much more similar to a porch or patio**, **then it is to a** "**cornice**, **eave**, **chimney**, **steps or canopy**."

  . . . .

6. The carport is a structure, as defined in the O[rdinance] therefore requiring [Baltzer] to either comply with the setback regulation or establish a variance.

R.R. at 175-177 (emphasis added). Consequently, the ZHB denied Baltzer's appeal and his variance request.

Section 303.2 of the Ordinance states, in relevant part:

Accessory or Appurtenant Structures - The setback regulations do not apply to:

1. Bus shelters; telephone booths; and cornices, eaves, chimneys, steps, **canopies**, **and similar extensions**, **but do apply to porches and patios whether covered or not**[.]

R.R. at 508 (bold emphasis added).

The ZHB acknowledged that Merriam-Webster defines "canopy," *inter alia*, as an "[a]wning" or "marquee." R.R. at 176. However, Merriam-Webster also defines "awning" as "**a rooflike cover extending over or in front of a place** (as over the deck or in front of a door or window) **as a shelter**." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/awning (last visited Apr. 20, 2023) (emphasis added). It also defines "marquee" as "**a permanent canopy** often of metal and glass **projecting over an entrance** (as of a hotel or theater)." *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-

14

webster.com/dictionary/marquee (last visited Apr. 20, 2023) (emphasis added). Thus, the permanent carport structure, which is simply a roof over the driveway supported by four posts and a crossbeam, could be described as a canopy, awning, or marquee.[10]

Notably, the side yard setback exception in Section 303.2.1 of the Ordinance does not apply to porches and patios, regardless of whether such porches or patios are covered. Thus, the side yard setback in the Ordinance explicitly applies to porches and patios rather than simply the coverings themselves. Here, the Borough approved Baltzer's driveway extension application, which, in part, includes the same area over which the carport is located. The carport structure is **not**, as the ZHB concluded, "much more similar to a porch or patio" referenced in Section 303.2 of the Ordinance, R.R. at 176, because the carport structure (and not the driveway) is the only unapproved part of the occupied space. The carport merely covers the approved driveway. Thus, the carport covering is more akin to "canopies, and similar extensions," R.R. at 508, (*i.e.*, an awning) than a prohibited porch or patio, since the approved driveway is permitted, and therefore, the only structure for consideration under Section 303.2.1 of the Ordinance is the carport posts and roof.

Because the carport is more akin to a permitted awning, Section 303.2.1 of the Ordinance exempts it from the side yard setback requirement. This

---

[10] The ZHB discounted the inclusion of the unique word "canop[y]" in Section 303.2 of the Ordinance, reasoning that, because Section 303.2 of the Ordinance separates "bus shelters" and "telephone booths" using semicolons, and "cornices, eaves, chimneys, steps, **canopies**, and similar extensions" using commas, "it requires the [ZHB] to reason that the O[rdinance] held [the latter] examples out as being very similar to one another." R.R. at 174 (emphasis added). Bus shelters and telephone booths are indeed quite different from "cornices, eaves, chimneys, steps, canopies, and similar extensions." R.R. at 508. However, similarities in the latter terms do not require that each word be interpreted identically or interchangeably. Rather, "[i]t is a familiar canon of construction of statutes and ordinances . . . that presumably **every word**, sentence or provision therein is intended for some purpose, and accordingly must be given effect." *Sterling v. City of Phila.*, 106 A.2d 793, 794 (Pa. 1954) (emphasis added).

15

interpretation is consistent with the directive that, "[i]n interpreting provisions of a zoning ordinance, undefined terms must be given their plain, ordinary meaning, 1 Pa.C.S. § 1903(a), and *any doubt must be resolved in favor of the landowner and the least restrictive use of the land*." *Kissell*, 729 A.2d at 197 (quoting *Tobin v. Radnor Twp. Bd. of Comm'rs*, 597 A.2d 1258, 1264 (Pa. Cmwlth. 1991) (emphasis added)). Accordingly, the ZHB erred by affirming the Zoning Officer's denial of Baltzer's Application based on Section 203.7.2. of the Ordinance.

### Enforcement Notice

The Zoning Officer assessed two charges relating to Baltzer's carport structure in the Enforcement Notice: (1) the carport encroached into the 10-foot minimum side yard setback required by Section 203.7.2. of the Ordinance; and (2) Baltzer's construction without a zoning permit violated Section 701.1. of the Ordinance.

Regarding the alleged violation pertaining to the carport's encroachment on the side yard setback, for the reasons explained, *supra*, the carport was exempt from the side yard setback requirement pursuant to Section 303.2.1 of the Ordinance. Thus, the ZHB erred by dismissing Baltzer's appeal in relation thereto.

Concerning Baltzer's failure to obtain a zoning permit for the carport, Section 701.1. of the Ordinance provides, in relevant part:

> No building, structure, or sign shall be erected, constructed, extended, replaced, demolished, converted, moved, added to or structurally altered, nor shall land, buildings, and structures be put to any use or have the use for which they are used changed, without a [z]oning [p]ermit therefore [sic] issued by the Zoning Officer.

R.R. at 606.

16

Section 112 of the Ordinance defines "structure" in pertinent part, as: "Any man-made object, including buildings, having an ascertainable stationary location on or in land or water, whether or not affixed to the land." R.R. at 424. Section 701 of the Ordinance required Baltzer to obtain a permit for the carport.[11] Accordingly, the ZHB did not err by denying Baltzer's appeal with respect to the Enforcement Notice violation of Section 701.1. of the Ordinance regarding the carport.

For all of the above reasons, this Court reverses the portions of the trial court's Decision denying Baltzer's appeal from the ZHB's denial of the carport Application and denying Baltzer's Appeal from the Enforcement Notice in regard to the side yard setback encroachment, and affirms the trial court's order in all other respects.

_____
ANNE E. COVEY, Judge

---

[11] Baltzer claims that he relied on the definition of "structure" contained in Section 212.25 of the Ordinance when he concluded that he did not need a permit for the carport construction. Section 212.25 of the Ordinance defines "structure" as "[a] **walled and roofed building**, including a gas or liquid storage tank that is principally above ground, as well as a manufactured home." R.R. at 500 (emphasis added). Nonetheless, the Ordinance is exceedingly clear that Section 212 of the Ordinance relates only to structures in the Floodplain District. *See* R.R. at 473. Because Baltzer's Property is not located in the Floodplain District, Section 212.25 of the Ordinance is inapplicable to the Property.

David R. Baltzer,      :
    Appellant    :
           :
   v.        :
           :
Zoning Hearing Board    :  No. 20 C.D. 2022
Strasburg Borough     :

## O R D E R

AND NOW, this 21st day of April, 2023, the Lancaster County Common Pleas Court's (trial court) December 6, 2021 order is AFFIRMED in part and REVERSED in part.

The trial court's order with respect to its denial of David R. Baltzer's (Baltzer) appeal from the Strasburg Zoning Hearing Board's (ZHB) denial of the carport permit application and its denial of Baltzer's Appeal from the Enforcement Notice regarding the side yard setback encroachment is REVERSED. The trial court's order is AFFIRMED in all other respects.

_____
ANNE E. COVEY, Judge