IN THE COMMONWEALTH COURT OF PENNSYLVANIA

R. Bruce McNew,                  :
                 Petitioner       :
                                       :
            v.                    :
                                       :
East Marlborough Township       :
and East Marlborough Township     :
Board of Supervisors,           :    No. 29 M.D. 2022
                 Respondents      :    Argued: May 14, 2026


BEFORE:    HONORABLE ANNE E. COVEY, Judge
                HONORABLE STELLA M. TSAI, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                               FILED: June 18, 2026

Before this Court is R. Bruce McNew's (McNew) Application for Summary Relief (Summary Relief Application), wherein he asks this Court to declare invalid Section 1821 of the East Marlborough Township (Township) Zoning Ordinance[1] related to local forestry and timber harvesting (Ordinance) and to enjoin the Township from enforcing it. After review, this Court denies the Summary Relief Application.


**Background**

McNew owns approximately 20 acres of land located at 921 Wawaset Road, Kennett Square, in the Township in Chester County, Pennsylvania (Property). Timothy S. Nilan (Nilan), professional forester and owner of Forestry Services

---

[1] Code of the Township of East Marlborough (2019).

Corporation, Inc. (FSC),[2] offered McNew $35,000.00 for the right to clear cut[3] trees on 10 acres of the Property. *See* Summary Relief Appl. Appendix (Appendix)[4] at 157, 197, 242-243. In accordance with the Pennsylvania Department of Environmental Protection's (DEP) Regulations, which the Chester County Conservation District (CCCD) locally administers, Nilan prepared an Erosion & Sedimentation Plan (E&S Plan). *See* Appendix at 292-315. By September 18, 2020 letter, Nilan submitted the E&S Plan to the Township on McNew's behalf requesting a zoning permit to allow timbering at the Property (Permit Application) beginning on September 21, 2020.[5] *See* Appendix at 14-15, 291-323. In his letter, Nilan apprised the Township that the Ordinance imposed requirements different from the rules and regulations governing timber harvesting that are under DEP's exclusive control. *See id.* at 14.

By September 25, 2020 letter, the Township's Zoning Officer, Charles Shock (Zoning Officer), notified FSC, *inter alia*, that despite oversight and permitting by the CCCD and DEP, the Permit Application must also comply with Section 1821.E of the Ordinance. *See* Appendix at 17-18. The Zoning Officer warned FSC that, pursuant to Section 1821.D.2 of the Ordinance, FSC had to file the Permit Application at least 45 days before commencing timber harvesting

---

[2] Nilan testified that he closed down FSC in 2023. *See* Summary Relief Appl. Appendix (Appendix) at 237.

[3] Clear cutting involves cutting the trees down and leaving the stumps. *See* Appendix at 197.

[4] McNew offered the pleadings and relevant discovery in support of the Summary Relief Application in a separately filed document entitled *Record in Support of Application for Summary Relief*. Although such documentation is permissible to support the Summary Relief Application, it is not a *record*. Accordingly, herein, this Court will treat and refer to McNew's supporting documentation as if it is an Appendix to the Summary Relief Application.

[5] Because the Township did not have a timber harvesting permit application, Nilan used the CCCD's Timber Harvest Application form. *See* Appendix at 14-15, 160, 291. Although McNew did not include the Permit Application or the E&S Plan with the Petition, *see* Appendix at 1-112, he produced unsigned copies thereof with the Summary Relief Application. *See* Appendix at 291-323.

operations, and if the Permit Application was complete and met the Ordinance's requirements, the Township had 30 days to issue a permit; therefore, no timber harvesting could take place at the Property before November 6, 2020. *See* Appendix at 17-18.

By October 9, 2020 letter, the Zoning Officer denied the Permit Application for the following reasons:

> 1. [Ordinance] Section 1821.D.1.[] [r]equires an applicant to provide [a] written agreement to comply with the regulations established in [] Ordinance Section 1821. No such agreement was provided by [FSC].
>
> 2. [Ordinance] Section 1821.E.1.[] [r]equires an applicant to submit a Timber Harvesting Plan, signed by a Professional Forester. [FSC] has not submitted a Timber Harvesting Plan signed by [FSC], [McNew,] or a Professional Forester. Additionally, [FSC's] narrative and mapping are vague.
>
> 3. [Ordinance] Section 1821.E.1.b.[] [r]equires that feature maps are to be drawn to scale. [FSC] submitted only website-based documents, which do not appear to be drawn to scale, nor detailed in nature.
>
> 4. [Ordinance] Section 1821.E.1.b.i., ii., iii., and iv.[] [r]equires an existing features map, drawn to scale, containing a complete legend of all symbols used on the map. [FSC] has not provided a suitable existing features map. Rather, the purported Soil Map, Site Map, and Topographic Map are website-based documents, marked up in unintelligible fashion. The provided maps do not provide clear descriptions, locations or details as to the proposed Timber Harvesting activities. Additionally, [] Ordinance Section 1821.E.1.b.iv[.] requires that the topographical survey of the site and immediate surrounding areas depicting topographic features be prepared by a registered surveyor or registered engineer, including a boundary line survey, among other unfulfilled express requirements.
>
> 5. [Ordinance] Section 1821.E.1.c.[] [r]equires a logging plan for the proposed Timber Harvesting Operation, which

3

is to include items listed in Subsections i., ii., iii., iv., v., and vi. [FSC] has not provided a[n Ordinance]-compliant logging plan.

6. [Ordinance] Section 1821.E.1.d.[] [a]llows an applicant to combine the requisite existing features plan with the requisite logging plan, provided all required information for each plan is clearly shown. [FSC] can address several [Permit] Application deficiencies in utilizing this provision's allowance.

7. [Ordinance] Section 1821.E.2.[] [r]equires a Plan for Forest Regeneration. [FSC] has not submitted a Plan for Forest Regeneration. It is assumed, given the nature of the [Permit] Application, that the Timber Harvesting is not proposed as a Conversion to Agricultural Activity, as otherwise described within [] Ordinance Section 1821 [(Forestry and Timber Harvesting)] and covered under [the erosion and sediment control provisions in DEP's Regulations, 25 Pa. Code §§ 102.1-102.51]. The failure to provide a Plan for Forest Regeneration results in non-compliance with a multitude of [Ordinance] Section 1821 requirements, including, [Ordinance] Section 1821.E.2.a.i., ii., iii., iv., and v., as well as [Ordinance] Section 1821.E.2.b.i. and ii.

8. [Ordinance] Section 1821.F.[] [s]ets forth requirements applicable to all Timber Harvesting applicants. [FSC] has failed to comply with requirements of [Ordinance] Section 1821.F. Until additional information, documentation, and Plans are provided (as outlined above), the Township cannot adequately assess compliance with [Ordinance] Section 1821.F.

At this time, given the above-identified [Permit] Application deficiencies, the Township cannot issue the requested timber harvesting zoning permit. Until required[] supplemental information and documentation is provided to the Township for further review, the timber harvesting zoning permit request is hereby denied.

Appendix at 20-22.

McNew took the position that the Zoning Officer's denial advanced the Township's regulatory scheme intended to duplicate, impede, and frustrate existing

comprehensive statewide regulations governing timber harvesting activities, *see* Appendix at 5, specifically, Section 603(f) of the Pennsylvania Municipalities Planning Code (MPC),[6] 53 P.S. § 10603(f) (which limits a municipality's authority to regulate forestry activities including timber harvesting); Sections 312 and 313 of the Agriculture Code commonly referred to as the Agriculture Communities and Rural Environment Act (ACRE),[7] 3 Pa.C.S. §§ 312, 313 (which prohibits a municipality from adopting and/or enforcing local zoning regulations prohibited or preempted by state law); and Sections 2 and 3 of what is known as the Right to Farm Act (RTFA),[8] 3 P.S. §§ 952, 953 (which precludes a municipality from regulating normal agricultural operations, including forestry and forestry products). *See* Appendix at 5, 8-10. Notwithstanding, McNew did not appeal from the Zoning Officer's denial, nor did he supplement the Permit Application.

On October 26, 2020, McNew's counsel submitted an ACRE review request to the Commonwealth of Pennsylvania Office of Attorney General (OAG) seeking a determination of whether the subject Ordinance provisions violated ACRE and constituted an unauthorized local ordinance that unlawfully restricted timber harvesting at the Property. *See id*. at 24-53. On November 4, 2020, the OAG responded to McNew and the Township, directed the parties to opinions on its ACRE website related to timber harvesting, and recommended that the Township enact Pennsylvania State University School of Agriculture's September 2019 model ordinance entitled *Forest Management and Timber Harvesting in Pennsylvania* (PSU Model). *See* Appendix at 55-56.

By January 11, 2021 letter, the Township replied to the OAG's recommendation, stating that it had amended its timber harvesting ordinance in 2019

---

[6] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

[7] 3 Pa.C.S. §§ 101-11108. ACRE was enacted and was immediately effective on July 6, 2005.

[8] Act of June 10, 1982, P.L. 454, *as amended*, 3 P.S. §§ 951-958.

based in large part on the Brandywine Conservancy's model timber harvesting ordinance (Brandywine Model); reviewed each of McNew's Ordinance challenges and declared them baseless; and concluded that amending the Ordinance to conform to PSU's Model was unwarranted. *See id*. at 58-85.

On October 1, 2021, the OAG issued its comprehensive review of the Ordinance, *see id*. at 87-91, therein asserting that while the Brandywine Model was a good template, "it has flaws[,]" and the PSU Model "is the gold standard." *Id*. at 87. The OAG offered to work with the parties to determine how McNew could proceed with timber harvesting at the Property and how the OAG could assist the Township in bringing the Ordinance into compliance with state law. The OAG further declared: (1) although the Township may require permits and charge fees to secure them, the MPC prohibits the Township from assessing fees to cover the Township's engineering and technical consultant costs; (2) to the extent that the Ordinance's site map, logging plans, and E&S [Plan] best management practices (BMPs) requirements are not duplicative of the state-mandated E&S Plan, they are permissible; (3) because Pennsylvania's Forest Stewardship Program is a voluntary program, the Township cannot make a Forest Stewardship Plan a requirement for securing a timber harvesting permit; (4) although the Ordinance references *regeneration*, pursuant to the PSU Model, the Township should seek to achieve *reforestation*; (5) blanket steep slope forestry activity restrictions violate the MPC because it conflicts with BMPs in the field of forestry, and both an E&S Plan and timber harvesting plan would address steep slope harvesting; (6) blanket prohibitions on timber harvesting within floodways and wetlands or riparian buffer zones conflict with DEP's erosion and sediment control and waterway management regulatory schemes, which allow timber harvesting near water sources using BMPs that take a property's unique conditions into consideration; and (7) ordinances attempting to place uniform percentage standards on forestry activities are unreasonable where

6

timber harvesting is a well-recognized forest management practice that can renew and improve a forest. *See* Appendix at 88-91. In addition, the OAG inquired of McNew and the Township:

> Can you let the OAG know . . . : [(]1) what are your thoughts on the information [the OAG] provided . . . ; [(]2) would you like to use the OAG's "good offices" to see if there is a way to have the timber harvest proceed; and [(]3) is [the Township] willing to work with the OAG to produce a timber harvesting ordinance that complies with state law?

*Id*. at 91. The OAG declared: "Regardless of whether the parties want to engage [in discussions for a short-term permitting solution], the OAG and [the Township] will work together on the longer issue of making sure the [Ordinance] complies with state law." *Id*. at 88.

By November 15, 2021 letter, the Township notified the OAG that it was committed to working with McNew and the OAG, it had retained Michael G. Jacobson, Ph.D., from PSU, to review the Ordinance's provisions, and it would offer a comprehensive response to the OAG, which it did on December 15, 2021.[9] *See id*. at 93-94, 96-109.

In its December 15, 2021 letter, the Township explained that, before FSC filed the Permit Application, the Township had approved McNew's application to change his lot lines to accommodate residential development at the Property that would result in substantial elimination of existing woodlands to be replaced by driveways and building areas.[10] *See id*. at 97 n.1. The Township declared its

---

[9] McNew does not state in the Petition whether he responded to the OAG's queries.

[10] The Township approved the subdivision plan subject to a standard condition that McNew comply with the Township's [O]rdinances and other laws which, *inter alia*, required him to replace trees removed in the development. McNew appealed from the condition, and also initiated separate federal litigation; however, the parties settled the litigation when the Township removed the condition.

willingness to make certain changes to the Ordinance and to discuss how McNew may proceed; however, it took issue with certain of the OAG's interpretations, remained steadfast regarding its duty to preserve its natural resources, found McNew's complaints inextricably intertwined with the Permit Application's significant deficiencies, and believed the Ordinance should be fully discussed and analyzed *before* the Township should have to disregard its timber harvesting requirements in McNew's favor. *See id*. at 96-109.

On January 24, 2022, McNew filed a Petition for Review in this Court's original jurisdiction, alleging therein that the Township continued to prohibit McNew from enjoying his timber harvesting rights in violation of ACRE, the Township has offered no legitimate explanation as to why it has disregarded the OAG's recommendation to adopt the PSU Model, and the Township's reliance on Section 1821 of the Ordinance to deny the Permit Application is unreasonable, invalid, and/or preempted by state regulations as the OAG addressed. *See id*. at 8-10. McNew asked this Court to invalidate Section 1821 of the Ordinance and enjoin its enforcement, direct that McNew may proceed with timber harvesting on the Property consistent with the Permit Application, and award McNew attorney's fees and costs pursuant to Section 317(1) of ACRE, 3 Pa.C.S. § 317(1). *See* Appendix at 10-11.

On March 4, 2022, the Township and the Township's Board of Supervisors (Board) (collectively, Respondents) filed Preliminary Objections to the Petition, which McNew opposed on April 4, 2022.[11] On April 26, 2023, this Court

---

[11] In the interim, effective June 11, 2022, the Board amended the Ordinance pursuant to the OAG's recommendations. *See* Appendix at 184, 186-187; *see also* Township Br. at 9, 11-13. The Township sent a copy of the 2022 version of the Ordinance to the OAG. *See* Township Br. at 12-13; *see also id*. Ex. A. The Township, *inter alia*, renamed its *Woodland Reforestation Plan* the *Forest Regeneration Plan*, pursuant to the OAG's recommendation. *See* Appendix at 185; *see also* Township Br. at 9 n.3. In addition, the Township eliminated Ordinance Section 1821.F.6.l

8

sustained the Preliminary Objections in part and overruled them in part. *See McNew v. E. Marlborough Twp.*, 295 A.3d 1 (Pa. Cmwlth. 2023) (*McNew I*). Thereafter, the Township filed an Answer and New Matter to McNew's Petition, McNew filed a Reply to Respondents' New Matter, and the parties undertook discovery.

On October 23, 2025, McNew filed the Summary Relief Application, therein seeking that this Court declare the Ordinance invalid and enjoin the Township from enforcing it because timber harvesting constitutes a *normal agricultural operation* under ACRE, and ACRE's exception does not apply. On November 7, 2025, the Township opposed McNew's Summary Relief Application. This matter is now ripe for this Court's disposition.

## Discussion

> The standard for granting summary relief turns upon whether the applicant's right to relief is clear. Summary relief on a petition for review is similar to the relief provided by a grant of summary judgment. [*See* Pennsylvania Rule of Appellate Procedure] 1532, [Pa.R.A.P. 1532], Official Note. Summary judgment is appropriate where, after the close of pleadings, "there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report." [Pennsylvania Rule of Civil Procedure (Civil Rule),] Pa.R.C[iv].P. 1035.2(a). The record is to be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Scarnati v. Wolf*, 173 A.3d 1110, 1118 (Pa. 2017) (footnote omitted).

---

and F.6.m governing the percentages of trees that can be harvested in interior areas and within 50 feet of lot boundaries. *See* Township Br. at 11 n.4; *see also id*. at 12-13. The Township also eliminated Ordinance Section 1821.G.3 that required plan review deposits.

Initially,

> "[m]unicipalities are creatures of the state and have no inherent powers of their own. Rather, they possess only such powers of government as are expressly granted to them and as are necessary to carry the same into effect." *UGI Utils., Inc. v. City of Lancaster*, 125 A.3d 858, 863 (Pa. Cmwlth. 2015) (quoting *Huntley & Huntley, Inc. v. Borough Council of Oakmont*, . . . 964 A.2d 855, 862 ([Pa.] 2009)). The General Assembly generally authorized "[t]he governing body of each municipality, in accordance with the conditions and procedures set forth in [the MPC], [to] enact, amend[,] and repeal zoning ordinances to implement comprehensive plans and to accomplish any of the purposes of [the MPC]." Section 601 of the MPC, 53 P.S. § 10601.

*McNew I*, 295 A.3d at 12 (footnote omitted).

Section 105 of the MPC declares that while its "intent, purpose[,] and scope [is] . . . to promote the preservation of this Commonwealth's natural . . . resources . . . any actions taken [by the governing body] to protect, preserve[,] or conserve such land shall not be for the purposes of precluding access for forestry." 53 P.S. § 10105. Section 603(f) of the MPC adds:

> Zoning ordinances may not unreasonably restrict forestry activities. To encourage maintenance and management of forested or wooded open space and promote the conduct of forestry as a sound and economically viable use of forested land throughout this Commonwealth, **forestry activities**, **including**, but not limited to, **timber harvesting**, **shall be a permitted use by right in all zoning districts in every municipality**.

53 P.S. § 10603(f) (emphasis added). Section 107 of the MPC defines *forestry* as "the management of forests and timberlands when practiced in accordance with accepted silvicultural principles,[12] through developing, cultivating, harvesting,

_____

[12] "'Silviculture' is defined as 'a phase of forestry that deals with the establishment, development, reproduction, and care of forest trees.' Webster's Third New Int['l] Dictionary 2120 (2002)." *Tinicum Twp. v. Nowicki*, 99 A.3d 586, 590 n.8 (Pa. Cmwlth. 2014).

10

transporting[,] and selling trees for commercial purposes, **which does not involve any land development**."[13]   53 P.S. § 10107 (emphasis added).  Therefore, tree removal for purposes of land development does not qualify as forestry or timber harvesting under the MPC in the first instance.

In accordance with the MPC, Section 1821.B of the Ordinance declares: "Forestry, including Timber Harvesting, shall be a permitted use by right in all zoning districts" but must be undertaken "according to the [Ordinance's] procedures and standards[,]" Appendix at 36, which include obtaining a permit (*see* Ordinance

---

[13] Section 107 of the MPC further defines *land development* as

> any of the following activities:
>
> (1) The improvement of one lot or two or more contiguous lots, tracts[,] or parcels of land for any purpose involving:
>
>> (i) a group of two or more residential or nonresidential buildings, whether proposed initially or cumulatively, or a single nonresidential building on a lot or lots regardless of the number of occupants or tenure; or
>>
>> (ii) the division or allocation of land or space, whether initially or cumulatively, between or among two or more existing or prospective occupants by means of, or for the purpose of streets, common areas, leaseholds, condominiums, building groups[,] or other features.
>
> (2) A subdivision of land.
>
> (3) Development in accordance with [S]ection 503(1.1) [of the MPC, 53 P.S. § 10503(1.1) (excluding from the definition of *land development* circumstances not appliable here)].

53 P.S. § 10107.  Section 107 of the MPC defines *subdivision* as

> the division or redivision of a lot, tract[,] or parcel of land by any means into two or more lots, tracts, parcels[,] or other divisions of land including changes in existing lot lines for the purpose, whether immediate or future, of lease, partition by the court for distribution to heirs or devisees, transfer of ownership or building or lot development[.]

*Id.*

11

Section 1821.D, Appendix at 41-42), the approval of which required the submission of numerous plans.

However, Section 313(a) of ACRE prohibits a municipality from adopting and enforcing "an *unauthorized local ordinance*[,]" 3 Pa.C.S. § 313 (emphasis added), which Section 312(1) of ACRE defines as "[a]n ordinance enacted or enforced by a local government unit which . . . [p]rohibits or limits a *normal agricultural operation . . . .*" 3 Pa.C.S. § 312(1) (emphasis added). Section 312 of ACRE adopts the following definition of *normal agricultural operation* from Section 2 of the RTFA:

> [t]he activities, practices, equipment[,] and procedures that farmers[14] adopt, use[,] or engage . . . in the production, **harvesting**[,] **and preparation for market or use of agricultural**,[15] agronomic, horticultural, **silvicultural**, and aquacultural crops and **commodities** and is:
>
> > (1) not less than [10] contiguous acres in area; or
> >
> > (2) less than [10] contiguous acres in area but has an anticipated yearly gross income of at least $10,000[.00].
>
> The term includes new activities, practices, equipment[,] and procedures consistent with technological development within the agricultural industry. . . .

3 P.S. § 952 (emphasis added); *see also* 3 Pa.C.S. § 312. Importantly, Sections 312 and 313 of ACRE only allow municipal regulation of a *normal agricultural operation* if "the local government unit: (i) has expressed or implied authority under

---

[14] Section 2 of the Farmers' Market Development Act, Act of October 27, 2006, P.L. 1186, 3 P.S. § 2402, defines *farmer* as a "person engaged in the production of agricultural commodities."

[15] Section 2 of the RTFA defines *agricultural commodity* to include "[f]orestry and forestry products" "transported or intended to be transported in commerce[.]" 3 P.S. § 952.

12

[s]tate law to adopt the ordinance; and (ii) is not prohibited or preempted under [s]tate law from adopting the ordinance." 3 Pa.C.S. § 312(1).

Here, McNew argues that there are no genuine issues of material fact, and he has a clear right to have this Court declare that the Ordinance is invalid (and enjoin the Township from enforcing it) because the harvesting of timber - a silvicultural commodity - constitutes a normal agricultural operation that the Township cannot by regulation prohibit or limit, since no state law authorized the Township to adopt the Ordinance; rather, state law prohibits or preempts the Township from doing so. *See* McNew Br. at 11-18. Specifically, McNew asserts that there are no genuine issues of material fact because "[t]his matter presents a straightforward question of statutory interpretation." McNew Br. at 11. The Township retorts that there are genuine disputes of material fact as to whether the nature of McNew's contemplated timber harvesting constitutes a *normal agricultural operation* under ACRE and *forestry* under the MPC, and whether McNew has complied with the unchallenged Ordinance requirements.

"The threshold question in any ACRE case is whether the [o]rdinance prohibits or limits a *normal agricultural operation*." *Off. of Att'y Gen. ex rel. Corbett v. Locust Twp.*, 49 A.3d 502, 516 (Pa. Cmwlth. 2012) (emphasis added; quotation marks omitted). "[W]hether the [o]rdinance creates unreasonable restrictions on [normal agricultural operation] is a genuine issue of material fact precluding a grant of summary judgment." *Id*. at 515. "In order for th[is] Court to make such a reasonableness determination, . . . it would have to understand how the [o]rdinance is being applied to [a] **specific** [silvicultural practice]." *Id*. (emphasis added). Therefore, here, it must be determined whether McNew's purpose is a

genuine silvicultural practice, i.e., as opposed to **land development**.[16] *See* 53 P.S. § 10107. Specifically, in its New Matter, the Township averred that, rather than a genuine silvicultural practice, McNew's purpose in allowing Nilan to timber harvest is to clear the Property for land development. *See* Appendix at 129-130. McNew denied that claim in his Reply to Respondents' New Matter. *See* Reply to Respondents' New Matter at 7.

> In his deposition, Township Manager Neil Lovekin (Lovekin) testified:
>
> Q. . . . Do you have any knowledge as to what my client's purpose is for his application to remove trees, other than the simple removal of trees? In other words, do you have any facts or anything to suggest that [McNew] has some secondary purpose for the [P]roperty after the removal of the trees that he now seeks?
>
> A. I do not have any written factual knowledge that [McNew] has any intent to move further with the [P]roperty in question. Of the [10] acres other than clearing. I am aware from other Township officials, based on prior interactions, that he has intent to build on the [P]roperty.

Appendix at 183. Lovekin added that the tone and lack of detail in Nilan's letter to the OAG, and the failure to rectify the Permit Application's deficiencies led the

---

[16] At oral argument before this Court, McNew's counsel represented for the first time that McNew's purpose in having the trees removed was that they were dead or dying. Although McNew and Nilan referenced in their depositions that some ash and oak trees on the Property were dead or showing signs of distress, McNew does not offer in his Petition for Review nor the Summary Relief Application that is why he is seeking to have them harvested. *See* Appendix at 206, 246. Notwithstanding, Article II, Section 450-202.A of the Ordinance's definition of *timber harvesting* excludes "[t]he removal of trees that are dead, are nearly dead due to natural aging or the existence of disease, rot or other damage, represent an imminent threat to public health or safety, or are invasive vegetation[.]" Appendix at 65, 83, 108. Therefore, even if McNew's intention was not land development but, rather, to remove dead or dying trees, such does not qualify as *timber harvesting* and, thus, a *normal agricultural activity* the Township is prohibited from regulating.

14

Township to believe that McNew raised the ACRE challenge solely to evade the Ordinance's requirements. *See id*. at 181.

In response, McNew claimed in his September 5, 2024 deposition that although he previously applied to do so, he does not intend to subdivide the Property:

> Q[.] Do you intend to sell or subdivide any portion of the parcel that is the subject of the timber harvesting applications?
>
> A[.] I have no plans to do so.
>
> Q[.] Do you intend to subdivide any of the other parcels that you own, adjacent and contiguous to the parcel?
>
> A[.] I have no plans to do so. I'm not sure -- like, the 2-acre lot [benefit from the historical designation],[17] I don't know that you could.
>
> Q[.] I guess I'm kind of circling back to what you understood to be the opportunity to get two extra lots that was alluded to by someone at the Township when the [O]rdinance was changed.
>
> Do you intend to try to pursue the two extra lot opportunity that was suggested?
>
> A[.] I have no plans to do so.
>
> Q[.] Okay. For any --
>
> A[.] Are you asking me to predict the future?
>
> Q[.] No. All I can ask is your intentions as we sit here today.
>
> A[.] I have no such intentions. I've been around long enough to learn that I don't know what I don't know, and I like to keep my options open.

---

[17] The Township informed McNew that the historic designation would benefit him because if he ever subdivided, the Township would allow him two extra lots above what the Ordinance permitted. *See* Appendix at 194-195.

> And it was given -- it was projected to me as a very valuable right to have by the people who were speaking for the Township, and I intended to preserve that right. Whether it will ever get used or not, I don't know.

Appendix at 206. Therefore, although McNew has no current plan to develop the land on which the subject trees are located, he has not foreclosed that possibility.

Notwithstanding, the law is well settled that "[i]n determining the existence or non-existence of a genuine issue of a material fact, **courts are bound to adhere to the rule of *Nanty-Glo* v. American Surety Co.,** . . . 163 A. 523 ([Pa.] 1932) . . . ." *Penn Ctr. House, Inc. v. Hoffman*, 553 A.2d 900, 903 (Pa. 1989). The *Nanty-Glo* Rule provides:

> Oral testimony alone, either through testimonial affidavits or depositions, of the moving party [(i.e., McNew)] or [his] witnesses, even if uncontradicted, is generally insufficient to establish the absence of a genuine issue of material fact. *See Nanty-Glo* . . . ; *Penn C[tr.] House, Inc.* . . .

Pa.R.Civ.P. 1035.2, *Note*. Therefore,

> **a court may not summarily enter a judgment where the evidence depends upon oral testimony**.
>
> > "'However clear and indisputable may be the proof when it depends on oral testimony, **it is** nevertheless **the province of the jury to decide**, under instructions from the court, **as to the law applicable to the facts**, and subject to the salutary power of the court to award a new trial if they should deem the verdict contrary to the weight of the *evidence*[.]'[] *Reel v. Elder*, 62 Pa. 308 [(Pa. 1869)]."
>
> [*Nanty-Glo*,] 163 A. at 524.

*Penn Ctr. House, Inc.*, 553 A.2d at 903 (bold emphasis added). Moreover, "[t]he [Civil Rules] permit a non-movant [(i.e., the Township)] to use hearsay in opposition to a summary judgment motion so long as [it] can demonstrate to [this C]ourt 'a

16

plausible avenue for the admission at trial of the hearsay.'" *Smith v. A.O. Smith Corp.*, 270 A.3d 1185, 1196 (Pa. Super. 2022) (quoting *Kardos v. Armstrong Pumps, Inc.*, 222 A.3d 393, 402 (Pa. Super. 2019)).

Because, here, whether McNew's one-time sale of the subject trees constitutes a *normal agricultural operation* in the first instance is disputed, this Court cannot resolve at the summary relief stage whether the Ordinance is invalid and must be enjoined.[18] *See Scarnati*; *see also Locust Twp.*

## Conclusion

Based on the foregoing, the Summary Relief Application is denied.

_____
ANNE E. COVEY, Judge

Judge Fizzano Cannon did not participate in the decision in this matter.

---

[18] Because McNew has not established based on the information he provided with the Summary Relief Application that he is conducting a *normal agricultural operation* in the first instance, there is no basis at this time for the Court to further address whether he has a clear right to relief.

17

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

R. Bruce McNew, : 
          Petitioner : 
      : 
        v. : 
      : 
East Marlborough Township : 
and East Marlborough Township : 
Board of Supervisors, :   No. 29 M.D. 2022
         Respondents : 

## O R D E R

AND NOW, this 18th day of June, 2026, R. Bruce McNew's Application for Summary Relief is denied.

_____
ANNE E. COVEY, Judge